CLAUDE E. CONNOR, PLAINTIFF IN ERROR, VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

1. The receipt or obtaining of property obtained under false pretences, is the consummation of the offense, and when the pretences are made in one jurisdiction and the property is obtained by the offender in another jurisdiction, the prosecution can be instituted only in the latter jurisdiction, unless there is a valid statute permitting it elsewhere.

2. An allegation that the party defrauded " then and there by reason of said false pretences " (they having been previously set forth in the information) " of the said defendants, and fully relying upon and believing in the truth thereof, were then and there induced to part with their ownership of and in said thirty-two hundred dollars to the said " defendants, " and did then and there part with their ownership in said thirty-two hundred dollars to said defendants," is not tantamount to an allegation that the defendants *obtained* the money.

3. An allegation that the defendants " obtained " by false pretences, previously described, certain money but not indicating where they obtained it; and one that the party defrauded then and there relying upon the pretences and believing in their truth were then and there induced to part with their ownership of and in the money, and did then and there part with their ownership in the same to the defendants, do not show where the money was obtained by defendants, or that it was obtained in the county or jurisdiction where the pretences were, as previously alleged, made.

4. An information charging the crime of obtaining property under false pretences is uncertain as to the venue, or jurisdictional locality of the offense, where, having previously named two or more places, it simply uses the word " there " (in the expression " then and there ") in charging the obtaining of the property ; and it is consequently insufficient and should be quashed.

5. An information for obtaining property under false pretences, which, by reason of its uncertainty, does not make it appear that the property was obtained in the county where the pretences were made, nor elsewhere in the State of Florida, does not show that a court of the county where the pretences are alleged to have been made has jurisdiction of the offense; and this even under a statute (sec. 4, p. 446, McClellan's Digest) which provides that in all cases where an indictable offense shall be perpetrated in Florida and the same shall commence in one county and terminate in another the person offending shall be liable to indictment in either county.

Writ of Error to the Circuit Court for Marion county.

The facts in the case are stated in the opinion of the court.

*R. L. Anderson* and *R. W. Davis* for Plaintiff in Error.

BRIEF OF R. L. ANDERSON.

This case was tried at the August term, 1891, of the Criminal Court of Record for Marion county, on information against C. E. Connor, Albertus Vogt and Z. C. Chambliss, charged jointly. When the trial was had Vogt was absent and the cause proceeded against the other two defendants—Chambliss was acquitted and C. E. Connor was convicted, and brings his case to this court on a writ of error.

There was a motion to quash the information, which was overruled by the trial court and exception re-

served to his ruling. Likewise after the conviction of plaintiff in error, there was a motion in arrest of judgment, the principal ground of which was that the case was not prosecuted "under oath," as required by the constitution and laws of Florida.

It is confidently insisted that both these motions should have been sustained. The information is in two counts and is of extraordinary length. It abounds in that uncertainty, indefiniteness and repugnancy which this court has frequently condemned, in criminal proceedings. Allowed to stand, it precluded the possibility of a fair trial. It formed the basis for the introduction of incompetent evidence ; it exposed the accused to surprise on his trial and rendered it impossible to make preparation for his defense.

Below are submitted the principal matters which are relied on to show the insufficiency of the information :

First. The second count, evidently the one relied on by the State, (for as we shall show later on, the first count is unquestionably defective), shows no charge " under oath," as required by the Constitution and Chapter No. 3731, laws of 1887. Section 13 of that act provides that the same rules of pleading and practice applicable to indictments shall be followed in prosecutions under information, and prescribes a form for the commencement of a valid information. The requirement is that it shall appear that the County Solicitor "under oath information makes," just as in the indictment the form should be " the grand jurors

on their oath do present." In introducing the second count here, it is simply stated: "And for a second count the said County Solicitor further information makes." "Each count in an indictment must be sufficient in itself." Keech vs. State, 15 Fla., 591. ; 1 Bish., C. P., 429.

Each count should have a *separate commencement and conclusion, the same as though it alone constituted the indictment.* 1 Bish., C. P., 429.

The motion in arrest of judgment should have been sustained, therefore, as to this count, and judgment should have been arrested for the reason that there existed no valid or sufficient charge to base judgment upon.

Any count from which the commencement is omitted is bad. Ib.

On the face of the indictment, every separate count must charge the defendant as if he had committed a distinct offense. Ib. 426.

Second. We contend that there is nothing in this information, in either count, to show the connection between the alleged pretenses and the parting with the money. It is an elementary principle in these false pretense cases that the indictment and the proofs should clearly disclose the fact that the parting with the property was connected with and the result of the alleged pretenses used, and there must be a minuteness of detail in the allegation which will clearly show this. Nothing can be taken by intendment. There

must be a connected story.   Jones vs. State,  22  Fla.,
532 ; 2 Bish. Cr, Pr., Sec. 175 and authorities in notes ;
People vs. Gates, 13  Wend.,  317 ; (page 322 quoting
2 T. R., 586) ; State vs. Orvis, 13 Ind., 369 ; Johnson
vs. the State, 11 Ind., 481 ; Enders vs.  the People, 20
Mich., 233 ; Pendry vs. State, 18 Fla., 199 ; 2 Bish. Cr
Pro., 163 ; State vs. Philbrick, 31 Me., 401 ; State vs.
Williams, 103 Ind., 235 ; Jones vs.  the  State, 50 Ind.,
473 ; 75 Ind., 553.   1 Bish. Cr. P. 624.

" The idea conveyed by the  defendant and set forth
in the indictment must be  identified  in  proof." 3rd
Dutcher, N. J.,  328 ;  Vanderbilt vs.  State; 2nd Bish.
Cr. Pr., Secs. 165 and 166.

Why should the bank pay  to these defendants the
moneys alleged to have been obtained upon representa-
tion that Pratt wanted  to  borrow  the  money and by
delivering papers executed  by  Pratt ?   What connec-
tion had the defendants with Pratt ?   Were they his
agents, claiming authority to collect for him ?   Or did
they present the papers and sell them to the bank ?  Or
did they falsely personate  Pratt  and  thus obtain the
money ?   Or were they  the  agents  of  the bank ?   In
either event it is necessary to allege the fact.   If these
defendants pretended to this  bank  that  Pratt wanted
to borrow money of it and delivered to the bank papers
bearing Pratt's signature and thus obtained the money
they certainly must have claimed  authority  to collect
for Pratt, or  must  have  imposed  upon the bank by
falsely impersonating him, or  they  must have offered
the papers for sale to the bank, or must have been con-

nected with the bank in some way. In either event the false pretenses of agency, or the false personation, or the sale and right to sell, would constitute an important element of the offense and as such should be set out in the information. It is not enough to simply allege that defendants pretended that Pratt wanted to borrow the money and presented papers signed by Pratt and that thereupon this bank turned over to them $3,200 in money. Something is omitted, and something which is a necessary averment, to connect the alleged pretenses with the alleged accomplished fraud ; and the defendants are entitled to know what is intended to be proven against them ; and the court is entitled to know in order that it may judge whether the money was in fact parted with by reason of the pretenses employed.

See the authorities above cited.

Unless there is a fulness of detail, how could it be possible to identify in proof the idea conveyed by the defendant to the prosecutor ?

Third. The indictment should particularize all the points intended to be relied on by the State to show wherein the title of the property is imperfect. This information sets out the fact that Pratt was represented by the defendant to be the owner of the lands mortgaged, that an abstract of title purporting to show the condition of the records in relation to such lands was delivered to the bank by the defendant, that this abstract purported to show who had been the owners of it. The information also alleges that Robert E.

Yongue could convey no title to said land to the said
Connor. The rights of a defendant accused of such
crime should be fully protected by a requirement that
the points, particulars and instruments showing the in-
validity of the title intended to be proven and relied
on, shall be fully set out in the indictment or informa-
tion. People vs. Miller, 2nd Parker's Crim. Reports
(N. Y.) 197., (opinion, page 200); Keller vs. the State, 51
Ind., 111 ; 2nd Bish. Cr. Pr., 168 and notes ; State vs.
Lambeth, 80 N. C., 393 ; And the proofs will be limited
to such points ; Barber vs. People, 17 Hun., 366.

How vitally important such requirement is and how
essential to the proper protection of a defendant on
his trial was proven in the very case now before the
court. At the trial a certain instrument purporting to
be the will of Mary A. Yongue was offered and admit-
ted in evidence in behalf of the State to prove that
Robert E. Yongue never had any title to the property,
that consequently his deed to Connor conveyed no
title, and Connor's deed to Pratt was likewise ineffect-
ual, and therefore the mortgage to the bank worthless.
No intimation of the existence of this will is con-
tained in the information, to apprise the defendant
of the points to be relied on by the State and on which
he would be required to prepare for this trial.

Fourth. There is no legally sufficient description of
the property alleged to have been obtained. It is too
general. The first count describes the property as
"$3,200, of the value of $3,200, the property of said
bank." The second count describes it as "the sum of

$2,993 and a check and order for the payment of money of the value of $2,993 of the property, goods and effects of the Land Mortgage Bank of Florida, Limited, of England, and the said John F. Rollins, Morgan and J. C. Greeley as its directors and managing agents as aforesaid." This description is insufficient. 2d Bish. Cr. Pr., secs. 173, 703 ; Treadway vs. the State, 37 Ark., 443 ; Jamison vs. The State, 37 Ark., 445 ; Smith vs. The State, 33 Ind., p. 159 ; 2d Wharton's Crim. Law, sec. 1221 ; 4th Zabriskie, p. 1 ; State vs. Kroeger, 47 Mo., 530 ; State vs. Kube, 20 Wis. (91 Amer. Decisions), p. 390.

The general rule is that the property should be described with the same definiteness as in larceny. 7th Encyclopedia of Law, p. 774.

Every reason that can be urged in support of this definiteness in cases of larceny, applies with equal force to charges of this nature. It is a safe and sound rule, sustained by reason and sanctioned by the great weight of legal authority. The few cases which reject this rule will be found, in nearly every instance, to be opinions resting upon no cited authority, or cases wherein the question of sufficient specific specification of property obtained was not raised by the accused.

Fifth. The information should show on its face that the court has jurisdiction. The allegation of the place where the alleged offense was committed should be clear, certain and precise. 1 Bish. Cr. Pr., (3d Ed.) secs. 360, 375, 376, and the authorities cited in notes ; also 45 *et seq.*

Want of jurisdiction is ground for quashing the indictment. *Ib.* 772.

We contend that the information in this case does not in either count disclose the jurisdiction of the Marion Criminal Court with sufficient clearness and certainty ; that it is open to the objection of vagueness, uncertainty and repugnancy, in respect of jurisdictional statements. The first count alleges that the accused, in Marion county, made false pretences to the Land Mortgage Bank of Florida, Limited, of England, doing business in Jacksonville, Florida, and to Greeley, Rollins and Morgan as its directors and agents. The court judicially knows that Jacksonville, Florida, is in Duval county. 1 Bish. Cr. Pr., sec. 378.

It is obviously impossible that a person in Marion county could verbally make representations to a bank and its managers in Jacksonville. If representations were made by letter the information should so state.

" The facts should be given with such minuteness and directness as to satisfy the common law rules of criminal pleading." 2 Bish. Cr. Pr., sec. 163.

If letters alleged to have been written by the accused were to be relied on and introduced in evidence by the State, the defendant should be apprised of such intention. If verbal statements were to be relied on the information should indicate the fact. 1 Bish. Cr. Pr., secs. 517 to 521.

The manner in which false pretences alleged to have been made in Marion county to a bank in Jacksonville were actually made should certainly be set out. It is in such case descriptive of the offense and necessary to be alleged, especially where, as in this case, so many and such various pretences are alleged. The information proceeds to charge the accused with the delivery of certain writings to this same bank and representing them as correct and genuine, and finally with obtaining money from the same bank, the Land Mortgage Bank of. Florida, Limited, of England, doing business in Jacksonville, Florida. It does not show *when* or *where* "the certain promissory note" alleged to have been delivered to the bank (see page 5 of the record) was actually delivered but leaves that point involved in obscurity. Surely the information should allege with precision the time and place, *when* and *where* the note was delivered to the bank, that being the very instrument on which the accused are charged with obtaining the money. And when and where was the money obtained? (See pages 6 and 7 of the record.) It is alleged that it was obtained from the same bank doing business in Jacksonville, Florida, but the place where and the time when are not even attempted to be stated. The books lay down as correct doctrine that the obtaining of the property really constitutes the offense. Innumerable pretences, however false, not followed by the getting of the property, constitute no offense under the statute.

See authorities cited in Amer. and Eng. Encyclopedia of Law, vol. 7, bottom p. 711.

The jurisdiction depends on the place where the property was obtained and its clear and precise allegation. Schaeffer vs. State, 89 Mo., 271 ; Skiff vs. The People, 2d Parker's Crim. Cases, 139 ; State vs. House, 55 Ia., 466 ; Com. vs. Wood, 142 Mass., 459 ; Norris vs. State, 25 Ohio St., 217 ; Stewart vs. Jessup, 51 Ind., 413. Many other cases might be cited.

The failure to allege when and where the money was obtained is a failure to allege jurisdiction, and is fatal to the information. Nor can the statute, Sec. 4, McClellan's Digest, page 446, be invoked in aid of this information, for the reason that it is not sufficiently alleged that the offense charged began in any county or was completed in any county. The information does not show with precision that the offense was begun anywhere nor where completed. There should be appropriate and sufficient averments if such a case as is contemplated by the statute was intended to be laid in the information. In such case the information or indictment should show where the facts alleged took place and that the offense commenced in one county and was completed in another. And see. sec. 11, Bill of Rights, Const. 1885.

"Even where the law allows indictment in a county other than that in which the offense was committed, still all the facts should be laid in the county where

they actually happened." 1st Chitty Crim. Law, 195. Quoted by Bish. 1st Cr. Pr. 381.

The second count uses the expression "in the county and State aforesaid." Where the antecedent is itself uncertain "there" and "aforesaid" only make the elements of place and time more uncertain. 1st Bish. Cr. Pr., 379 and 414.

Besides, it is again repeated in averment that the alleged pretences were made to the same bank which we are informed in the first count and which the court must·know (1 Chitty Crim. L., 248), does business in Jacksonville, Florida. How these pretences were made to the bank and where they were made does not appear.

See authorities above cited on the same point.

This is followed. by the averment of making false writings by the defendant in Marion county (pages 12 and 13 of record) and the delivery of the same and causing the same to be delivered "then and there by the defendants" to the "said Land Mortgage Bank as aforesaid." How they were delivered in Marion county to a bank in Jacksonville is unexplained and indeed inexplicable. The "causing to be delivered" perhaps means, if we are permitted to guess in matters of this sort, that the writings were sent by mail or otherwise. Now, if the writings were, delivered through the mail, or by a public carrier, the offense was certainly committed in Duval county. And the same criticism applies to the allegation of obtaining the money. It was obtained from a *Jack-*

*sonville bank* by the delivery to a *Jacksonville bank* of certain false writings. It makes no difference whether it was handed to the defendants in person or transmitted through the mail or ordinary business channels. The obtaining *was from the bank* and from a *bank in Jacksonville.*

See authorities above cited.

Nor will it suffice to say in excuse of this repugnancy and confusion that such delivery might have been made to Rollins, Greeley and Morgan in Marion county. If such was meant it should have been alleged. If the writings were delivered to these agents in Marion county and the money obtained from them in Marion county, why should there be an allegation that the delivery of the writings was made to *the bank at all or that the money was obtained from the bank?* It would be sufficient in such case to simply state the fact of the delivery of the writings to one of the agents and the getting of the money from him. It is impossible, therefore, to determine with certainty from the information, taking it altogether, where the alleged offense was committed. There is irreconcilable inconsistency and repugnancy. The venue laid in the margin is inconsistent with the facts set out in the body of the information. Where it is so easy to allege these jurisdictional elements distinctly, and since such matters so vitally affect the rights of persons accused, the greatest strictness should be required. So far as we are really able to conclude from the averments of the information the alleged pretences were made, the writ-

ings delivered and the money obtained at the bank in Jacksonville. The offense, if any was committed, was therefore complete in Duval county. That this is true the facts developed on the trial clearly disclose.

The Constitution guarantees trial by impartial jury *in the county where crime was committed.* Sec. 11, Bill of Rights, Const. 1885. And there is no offense until property is obtained. (See authorities cited above.)

Sixth. If there is any element of this offense required by law to be certainly and clearly laid in the indictment and to be clearly proven on the trial it is the ownership of the property alleged to have been obtained. People vs. Krummer, 4 Park Cr. C. 217; Ladd vs. the State, 17 Fla,, 215; Jones vs. State, 22 Fla., 532 ; 2nd Bish. Cr. Pr., Sec. 173 and notes; Sill vs. Reg., Dears. 132, on statute 14 and 15 Vic. similar to our criminal proceedings. *Ib.*, Sec. 722 and 723 ; 7th Encyclopedia of Law, bottom page 776 and notes ; 1st. Bish. Cr. Pr., Sec. 581 to 583; *Ib.*, Sec. 488, b and notes.

In alleging ownership in owner or bailee there must be an election in which the ownership will be laid. 2nd. Bish. Cr. Pr., Secs. 720–21, 722 and 723. And in this case should be laid in the bank. Jones vs. State, 22 Fla., 532.

Who is the alleged owner of the property charged to have been obtained in this case ? The first count alleges that it was "the property of the said bank." The second count alleges the property obtained to be

of the "property, goods and effects of the said Land Mortgage Bank of Florida, Limited, of England, and the said John F. Rollins, Morgan and J. C. Greeley as its directors and managing agents as aforesaid." The information nowhere shows whether this alleged bank is a corporation, a copartnership or otherwise. The legal existence, the legal entity, is not shown. A bailee or agent presupposes a principal or bailor. The property cannot be owned both by the bank and by Rollins, Greeley and Morgan. In the first count, therefore, the ownership is laid in no person, natural or artificial, corporation or co-partnership. In the second count the ownership is laid or attempted to be laid as that of the bank and also of Rollins, Greeley and Morgan as agents. Such uncertainty is fatal.

See the authorities above cited.

Wherever a name of an institution such as a bank or a company occurs in an indictment its corporate character should appear if such be the fact. Bish. Cr. Pr., 1st vol., Sec. 682; Wallace vs. the People, 63 Ill., 451; People vs. Schwartz. 32 Cal., 160; Alden vs. State, 18 Fla., 187; Jones vs. State, 22 Fla., 532.

See also authorities cited by Bishop, supra.

Even in civil proceedings such uncertainty and looseness would not be tolerated. The character of this bank, as a corporation, co-partnership, or individual, or individuals, should be alleged, because it is essential that the *party injured*, and the owner of the property, should be identified.

Seventh. If any offense at all is charged in this in-

formation it is that of forgery, but even that offense is not legally set out.   Where money is alleged to have been obtained by the use of false writings the distinction drawn by the authorities between the offenses of forgery and obtaining money under false pretences is based on the question whether the false writing purports to be the instrument of the person offering it, claiming the authority to execute it, or of the apparent maker.   In the case of Mann vs. People, 15., Hun., p. 155, there is a lengthy and exhaustive discussion of this question and a collation of all the authorities, showing that the making of false writings and delivery of the same as is charged in the second count of this information constitute the crime of forgery and not that of obtaining money under false pretences ; and where the crime charged shows the commission of a forgery and the obtaining of money by means of it, the authorities in England hold that the prosecution should be for the forgery.   See Rex vs. Evans. 5 Car. & P., top p. 453,  553.   See also as to distinction between forgery and false pretences, 7th Enc. of Law, p. 702.

Eighth.  The first count of this information contains a fatal repugnancy.   It alleges, first, that Pratt had no title to the land and that he was falsely represented by the defendant to be the owner of said land, when in fact he had no interest therein and it also alleges that a certain deed executed by the same Pratt to one E. M. C. Duncklin constituted an incumbrance thereon. Clearly both of these cannot be true.   If Pratt owned the land his deed to Duncklin might create an incum-

brance. If he did not own it his deed was void. This allegation bears a striking resemblance to the prayer for relief in a bill in chancery where the complainant is uncertain as to the exact relief grantable by the court, and therefore prays in the alternative. In this case the State in effect says that if it turns out on the trial that Pratt did have a title to this land the defendant should be convicted because of his representation that the land was unincumbered when in fact it was; if it should develop, however, that Pratt had no title then the defendant should be convicted because of his misrepresentations that he did have the title, when in fact he hadn't. Such pleading will not be allowed in criminal procedure. 1st* Bish. Cr. Pr., secs. 489 and 509 ; Keller vs. the State, 51 Ind., 111.

Ninth. It is a reasonable and salutary rule of law that a person cannot be charged with false pretences predicated upon the alleged condition of title to real property and the state of the records in relation thereto. In all matters of property the record is notice and is conclusive upon persons dealing in realty, buying, selling or mortgaging. It is believed that no sufficient reason can be found to explain why a different rule should obtain in criminal matters. See Com. vs. Grady, 13 Bush, 285 ; Com. vs. Haughey, 3 Metcalf (Ky.), 223 ; also 2 Wharton's Crim. Law, sec. 2129, and the authorities cited.

Tenth. This indictment is vague on the point of the ownership of the property. It discloses no legal entity as the owner of the money alleged to have been

obtained in the first count. It does not distinguish as to the ownership of the property in the second count, whether belonging to the alleged bank or to Greeley, Rollins and Morgan. It could not belong to both. The information is vague and confused in its various parts as to the names of the defendants and the name of the bank alleged to have been defrauded. Throughout the first and second counts the defendants are variously called Claudius E. Connor, Claude E. Connor, Claude Connor, C. E. Connor and Connor; Albertus Vogt and Albertus W. Vogt. The bank is called the Land Mortgage Bank of Florida, Limited, of England, the Land Mortgage Bank of Florida and Mortgage Bank, also simply bank. · See Bish. Cr. Pr., vol. 1, secs. 488, also 683, 689 *b* and 488, and cases cited.

These matters of variance cannot be rejected as surplusage. 1st Bish. Cr. Pr., 485, and cases cited in notes ; also 1st Bish. Cr. Pr., sec. 484 .

The information is vague as to the description of the property obtained.

It is vague and indefinite in explaining the connection between the alleged pretences and the obtaining of the money. See authorities cited in sub-division No. 2, *supra*.

In the second count the defendants are charged with making a false writing, to-wit : a certain draft drawn by Robert L. Pratt payable to the order of the Merchants' National Bank of Ocala for $2,193, and also a certain other false writing, to-wit : a draft purporting to be dated Ocala, Florida, Marion county, November

4, 1889, and signed by the said Edward H. Buffum, directing the said Mortgage Bank of Florida, Jacksonville, Florida, to pay at sight to the order of the Merchants' National Bank of Ocala, Florida, $800.  Why the Land Mortgage Bank should have paid money to the defendants on such papers as these is nowhere disclosed.  In what manner the bank paid to Connor, Chambliss and Vogt the moneys alleged on presentation of a draft drawn by Edward H. Buffum in favor of the Merchants' National Bank is certainly very mysterious, and certainly no information would be sufficient which failed to allege what representations were made to induce such payment.  Jones vs. State, 22 Fla., 532.

The information is further vague and indefinite and insufficient because it does not properly negative the execution by said Pratt and wife of the note and mortgage, the charge being that in truth and fact said papers were not executed for the purpose of securing the money or as security for the money.  If the papers were forgeries the allegation should have been positive that they were not executed at all.    37 Kan., 222 ; 31 Mo., 413 ; People vs. Hynes, 11 Wendell, 551.

There should be certainty as to name, situation, extent, nature, quantity, number, value and ownership. 1st Starkie Crim. Pl. (2d Ed.), 183 and 185 ; 1 Bish. Cr. Pr., secs. 566 to 572.

" One may well doubt the wisdom of crowding so hard against the constitutional rights of persons ac-

474 SUPREME COURT.

Claude E. Connor v. The State of Florida.—Argument of Counsel.

cused, in order to save prosecuting officers the trouble of writing a word." 1 Bish. Cr. Pr., 385.

Eleventh. The guilt of the defendant by the allegations of the information is made to depend on whether or not C. E. Connor in fact paid $4,000 to Robert E. Yongue for this land and whether Robert L. Pratt paid or agreed to pay in fact $6,000 for the land as set up in their respective deeds described in the information. This is sufficient. See Keller vs. the State, 51 Ind., 111.

As a matter of law it could make no difference so far as the rights of the bank were concerned whether $4,000 or $1,000 was paid for the land. Very few persons in these days of real estate sales and transactions would be willing to be put on trial on a criminal charge based upon the consideration named in the deeds which they execute. If this information be valid, however, it was only incumbent on the State to show as establishing the guilt of the defendant that $4,000 was not in fact paid by Connor to R. E. Yongue for this land, and although Connor did in fact obtain a deed from Yongue based upon a good and lawful consideration yet *the proof of the very fact which constituted the deed a valid one and showed a good consideration for it was, under the allegation of this information, the evidence of his guilt.*

*The Attorney-General* for Defendant in Error.

RANEY, C. J.:

The information is for obtaining property under false pretenses. There was a motion made in the trial court to quash the information, but the motion was overruled, and error has been assigned on this action. The first ground of the motion to be noticed is the one asserting that the information does not show jurisdiction of the court to try the cause. The principle of law relied upon in support of this contention is, that the receipt of money or other property obtained under false pretenses is the consummation of the offense, and the place of its receipt by the offender is the locality of jurisdiction. The receipt or obtaining of the property is the consummation of the offense, and, in the absence of a valid qualifying statute, the place of its receipt is the sole locality of jurisdiction. If the false pretenses are made in one jurisdiction, but the property is obtained in another, the prosecution must, in the absence of such a statute, be instituted in the latter jurisdiction. 7 Am. & Eng. Enc. of Law, 758, 762. In State vs. House, 55 Iowa, 466, where the property alleged to have been fraudulently obtained consisted of promissory notes and a mortgage securing the notes, the false pretenses were made and an agreement of settlement providing for the execution and delivery of the notes and mortgage, was executed in Wright county, and afterwards the notes and mortgage were made and delivered to the defendant in Polk county, where he was

indicted, tried and convicted; and it was held that the false pretenses made in Wright county were not a crime, that an indictment would not lie there because the notes were not obtained there, and that as the crime was consummated in Polk county, by the delivery of the papers in that county, the indictment was properly found there, no matter where the false representations which induced their delivery were made. In Skiff vs. People, 2 Parker's Crim. Rep., 139, the county of the delivery of the property was held to be the proper county for the trial of the offense, though the note for the property was not made and delivered until subsequently, and in another county. Norris vs. State, 25 Ohio St., 217, decides that where one, by false pretenses contained in a letter sent by mail, procures the owner of goods to deliver them to a designated common carrier in one county, consigned to the writer in another county, the offense of obtaining goods by false pretenses is complete in the former county, and the offense must be prosecuted therein, the delivery of the goods to the common carrier being a delivery to the defendant's agent, and hence in law a delivery to the defendant. In People vs. Adams, 3 Denio, 190, Adams and another were indicted in the city of New York for obtaining money from a firm of commission merchants in that city by exhibiting to them fictitious receipts signed by the other defendant in Ohio, falsely acknowledging the delivery to such other defendants, of a quantity of produce for the use of and subject to the order of the firm, and Adams pleaded that he was a natural born citizen of Ohio, and had always re-

sided there, and had never been in the State of New York ; that the receipts were drawn and signed in Ohio, and that the offense was committed by the receipts being presented in New York to the firm by innocent agents there employed by the defendant in Ohio ; and the plea was adjudged to be bad, and the indictment to have been properly found in New York; and, in entire consistency with this decision, it was held in Stewart vs. Jessup, 51 Ind., 413, that a person is not liable to conviction and punishment in Indiana for obtaining property under false pretences, where the property has been obtained outside of that State, although the false pretences may have been made within it. See also *In re* Carr, 28 Kansas, 1 ; State vs. Round, 82 Mo., 679 ; State vs. Schaeffer, 89 Mo., 271 ; Commonwealth vs. Taylor, 105 Mass., 172 ; Commonwealth vs. Wood, 142 Mass., 459 ; Commonwealth vs. Van Tuyl, 1 Met. (Ky.), 1, s. c.; 71 Am. Dec., 455.

We will defer any consideration of statutory provision, that in all cases where an indictable offense shall be perpetrated in this State, and the same shall commence in any one county and terminate in another, the person offending shall be liable to indictment in either county (sec. 4, p. 446 McClellan's Digest), and will test the information, upon the point of venue, by the rules of law laid down above.

The allegations of the first count as to obtaining the money, are, substituting figures for words, as follows :

"And the said Connor, Chambliss and Vogt, by means of the said false pretenses, obtained from the said bank, and the said Rollins, Morgan and Greeley, as its managing agents and directors, certain moneys, to-wit : $3,200, of the value of $3,200, the property of said bank. And the said bank, and the said Rollins, Morgan and Greeley, as its directors and managing agents, then and there, by reason of the said false pretenses of the said defendants, and fully relying upon and believing in the truth thereof, were then and there induced to part with their ownership of and in the said $3,200 to the said Connor, Chambliss and Vogt, and did then and there part with their ownership in said $3,200 to said defendants." It is apparent that there is nothing said in the first of the above quoted sentences as to place, and hence no express statement as to where the defendants *obtained* the money. Assuming, as we will, for the purpose of the point under discussion, that the venue of the pretenses, as previously laid in the count, is in Marion county, still such distinctive allegation of venue cannot be invoked to show that the defendants did obtain the money in the same locality or jurisdiction, in the absence of apt words connecting the obtaining of the money with it. The first sentence, then, fails altogether to show where the money was obtained, or where, in the light of the above authorities, the offense was consummated, or is indictable ; and consequently the count must be held to be insufficient, unless we can find from the succeeding or second sentence of the quoted words, that the money was obtained by the defendants in Marion county. We will admit it

was the *intention of the pleader* that the word
"there," as used in the second sentence, should refer
to the county of Marion in this State, when mentioned
in the preceding parts of the information in designat-
ing the venue of the pretenses ; still this sentence, if it
is not in substance and effect an allegation that the de-
fendants *obtained* the money, will not save the count
under consideration.   Giving the word "there" the
effect and meaning of the words "in the county of
Marion, in the State of Florida," has the sentence the
meaning and effect suggested ?   We do not think that
an allegation that the person defrauded, or owner of
the property, or his agent, was by reason of and in re-
liance upon false pretenses of a defendant, induced to
part with and did part with their ownership of and in
certain moneys, or other property to the defendants,
is the equivalent of an allegation that the defendants
obtained the money by or through such pretenses or at
all.   This is not a prosecution for obtaining under false
pretenses a signature to any written instrument, the
false making whereof would be punished as forgery ;
but it is for obtaining or getting the possession of the
money itself.   The ownership of the bank in the money
could have passed to the defendants without the de-
fendants obtaining the money or the bank having
parted with the money itself, or having delivered it to
the defendants, or to any one.   To "obtain," as de-
fined by Webster, means "to get hold of by effort ;
to gain possession of ; to acquire."   The two former
definitions give more accurately than the third the
meaning of the word as used in the statute.   In State

vs. Lewis, 26 Kansas, 123, the information charged that upon certain false pretenses of Lewis, one Burton "paid" to him the stated sum of $330, the money, property and effects of certain parties, but it was not alleged that Lewis *obtained* any money or any other property of any one ; and the question was whether the word paid was the equivalent of the word obtained. "The crime defined by the statute," says the opinion, "is not that of making a false pretense, but the provision is directed against one who obtains something, or who, in other words, gets possession of something purposely by effort, that is, by false pretenses. This being true, the information does not describe the offense either in the exact words of the statute, or by adoption of other words of substantially the same meaning with the words of the statute." Kennedy vs. State, 34 Ohio St., 310 ; Commonwealth vs. Lannan, 1 Allan, 500 ; People vs. Phillips, 13 Hun., 395. The bank and its agents might ha ￫ been induced by the defendants to part with the ba ￬'s ownership of and in the money to the defendants, and might have actually parted with the bank's ownership of and in the money to the defendants, and all this might have been in Marion county, and still the defendants may not have obtained possession of the money in that county, or even at all. This count does not show that the defendants obtained the money in Marion county, and hence, it (when judged in the light of the law as it is set forth above) is insufficient.

Proceeding now to consider the amenability of the *second* count to the objection that it does not show

the jurisdiction of the court; or, in other words, does not show that the money was obtained or the offense committed *in Marion county*, it is proper to state that the averment of this count as to the defendants' obtaining the money is: that the defendants, by means of the said false pretenses and said false and privy tokens, did then and there obtain from the said "Land Mortgage Bank of Florida," limited, of England, as aforesaid, and the said John F. Rollins, Morgan and Greeley, as its agents, certain property, to-wit: the sum of $2,993, and a check and order for the payment of money, of the value of $2,993, of the property, goods and effects of the said "Land Morgage Bank of Florida," limited, of England, and the said Rollins, Morgan and Greeley, as its directors and managing agents as aforesaid, and the said bank and the said Rollins, Morgan and Greeley, as its directors and managing agents aforesaid, relying upon and fully believing in the truth of he said false pretenses, and said false and privy tokens and paper writings of the said defendants, were then and there induced, by reason of same, to part with the said money and the said check and order for money and the ownership therein of the said bank, and the said Rollins, Morgan and Greeley, directors and agents aforesaid, to said defendants.

It is a settled rule that if the indictment or information is uncertain, or repugnant to itself, as to the county, or other jurisdictional locality, of the commis-

sion of the offense, or, in other words, as to the venue of the offense, it will be held insufficient. 2 Hale's P. C., 180 ; 1 Bishop's Crim. Pro. (3d Ed.), sec. 379 ; 1 Chitty's Crim. Law, 160. In Cain vs. State, 18 Texas, 391, the indictment, after "State of Texas, County of Fayette,".and the usual commencement, charged that James Cain, late of Travis county aforesaid, yeoman, with force and arms in the county aforesaid, on, etc., did then and there feloniously steal, take and carry away, etc., it was held that there was manifest repugnancy as to the place or county where the offense was committed, and that it was good ground in arrest of judgment ; and in Bell vs. Commonwealth, 8 Gratt., 600, Campbell county, the county in which the indictment was found, was mentioned in the caption, and in the body of the indictment it was charged "that Alonzo G. Bell, late of the county of Roanoke, in the State of Virginia, laborer, on the 10th day of March, A. D. 1850, with force and arms at the parish of Russell, in the county aforesaid," one bay mare of the value, etc., and the indictment was held bad as not showing with sufficient certainty that the offense was committed in Campbell county. It is observed in State vs. McCracken, 20 Mo., 411, where two different counties were named and the indictment was quashed, that when two different times and two different places are mentioned in an indictment, and a material fact is afterwards averred, it will not be sufficient to give venue to such fact by stating "then and there" only, for it will not do to say that, grammatically, "then

and there" refer to the last antecedent time and place. See also Regina vs. Rhodes, 2 Raymond, 886; King vs. Inhabitants of Moor Critchell, 2 East, 65; Rex vs. Kilderby, 1 Saunders, 308; Queen vs. Gunn, 11 Modern, 66.

In view of what appears in the second count in its averments of the pretences, and preceding what is quoted above, it is impossible to say that the word "there," as used in the quotation, this count refers only to Marion county, or locates the obtaining the money and check in that county. Though at the outset of the count it is alleged that it was in such county the defendants designedly and fraudulently pretended, still such pretending or pretences are charged to have been made to the Land Mortgage Bank of Florida, Limited, of *England*, and though afterwards, but preceding the above quotation, it is charged that certain false and fraudulent papers were made in Marion county, yet in connection with these allegations the bank, the party alleged to have been defrauded, is again, and more than once, described as " of England," and in one place it, in designating a draft or order as one of the false pretences used in obtaining the money or check, is designated as "of England, Jacksonville, Fla." If it be that the absence of the word "city" before the word " Jacksonville," will prevent our taking judicial notice that the city of Jacksonville, in Duval county (a city, we may observe, which is incorporated by special statute, Chapter 3775, approved May

21, 1887, and Chapter 3776, approved June 2, 1887, and Chapter 3952, approved May 16, 1889, and Chapter 3953, approved May 31, 1889, and Chapter 4639, approved June 9, 1891), is the place meant by the words "Jacksonville, Florida," still we think the word "there," in the expression "then and there," in the averment as to the obtaining the money or check is, in view of the preceding statement of the two jurisdictions, Marion county and England, entirely insufficient to show where the defendants obtained the money or check, and hence that the count is entirely uncertain as to the venue or jurisdiction of the obtaining of the things mentioned. It can not be held to refer any more to Marion county than to England.

Tested by the rule laid down in the first paragraph of this opinion, neither of the two counts is sufficient, and for the reasons indicated as to each count, yet without saying that the first is not subject also to the criticism made of the second, the information must be quashed, unless the statute first referred to above (sec. 4, p. 446, McClellan's Digest) will save it. This statute cannot be invoked as aiding a case of this character, unless the information or indictment shows a consummation of the offense in Florida. There has been no crime committed in Florida, unless the money or the check was obtained here; and this is not shown by either count. If the information duly represented that the things were obtained in Marion county, the information would be good upon its face as against the ob-

jections considered ; or if it represented that the pretenses were in Marion county, and the money and check were obtained in another county in the State, it would also be good under the above statute, unless there is something in the nature of cases of this kind, which has not been suggested. If there is nothing of such kind in the nature of the case, and an information should lay both the pretenses and the obtaining in the same county, when in fact they are in different counties, a question of variance might arise rendering it necessary to decide the question of the proper way of pleading offenses which the statute last cited was intended to apply to. The authorities cited cannot be held to be in harmony. Mr. Bishop approves a statement of them as they occurred ; 2 Bishop's Crim. Pro., sec. 381 ; 1 Chitty's Cr. Law, 195 ; and certainly this is fairest to the accused. People vs. Dougherty, 7 Cal., 395.

The information should have been quashed ; and in view of the jurisdictional reasons leading to this conclusion, we cannot be expected to consider the numerous other objections made to the information.

The judgment will be reversed, and the cause remanded with directions to quash the information.