Thalheim v. The State of Florida.—Syllabus.

## CARL THALHEIM, PLAINTIFF IN ERROR, VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

| | |
|---|---|
| 38 | 169 |
| d40 | 222 |
| 38 | 169 |
| 43 | 223 |
| 43 | 532 |
| 43 | 535 |
| 38 | 169 |
| f44 | 73 |
| f45 | 3 |
| 45 | 54 |
| 46 | 19 |
| 46 | 88 |
| 46 | 95 |
| e46 | 184 |
| 48 | 26 |
| 48 | 31 |
| 48 | 33 |
| e49 | 109 |
| 49 | 147 |
| 38 | 169 |
| 50 | 77 |
| 51 | 117 |
| 51 | 121 |
| 38 | 169 |
| f52 | 48 |
| 38 | 169 |
| e55 | 174 |
| 38 | 169 |
| 58 | 43 |
| 58 | 65 |
| j59 | 87 |

1. An indictment may contain only a general allegation of an offense, wanting in details, of which the defendant is justly entitled to be informed before trial; if it is in conformity to the statutory requirement upon the subject. In such cases, upon a showing that the same is necessary for the proper administration of justice, the court should order the defendant to be furnished with a bill of particulars of the alleged offense.

2. The power to direct the furnishing of a bill of particulars, under the circumstances stated in the preceding head-note, does not depend upon any express statutory provision, but upon the general authority of the court to regulate the conduct of trials. The power should always be exercised when there is danger that otherwise a party may be deprived of his rights, or that justice may not be done; but the defendant has a right to such bill of particulars only when the indictment does not give him adequate notice of the charge he is expected to meet.

3. An indictment for embezzlement under our statute permitting it to allege the offense in a general way, is a case where a bill of particulars should be furnished to the defendant upon proper application by him.

4. To give any other construction to the law than is given in the three preceding head-notes, would be in conflict with the eleventh section of the bill of rights of our State Constitution, which provides that "in all criminal prosecutions the accused shall have the right * * * to demand the nature and cause of the accusation against him."

5. While there is no doubt of the power of the trial court to direct that a bill of particulars in a criminal case be furnished, yet the question whether it shall or shall not be furnished in the particular case is within the reasonable discretion of the trial judge.

6. A reference to a paper filed in another court of inferior jurisdiction, in which the details of the offense are stated, is not the furnishing of a bill of particulars in the meaning of the law. It should be furnished and filed in the case pending, and in the court to which the application is made.

7. A public prosecution for a criminal offense must be conducted by the proper official *representative* of the State, and must not under any circumstances be placed under the entire management and control of private parties or their attorneys. It is proper, however, for the State attorney, when there is no express statutory prohibition, to obtain, with the consent of the court, the assistance of other counsel; and other members of the bar are not incompetent to be engaged for such assistance, and taking part in the trial, by reason of being retained and paid by private persons. When such assistants are employed in the case, the State attorney should always remain present at the trial, and see that a public prosecution does not degenerate into a private persecution, and that the administration of the criminal law is not made a vehicle of oppression for the gratification of private malice, or the accomplishment of private gain or advantage.

8. No question of error in any ruling of the trial court in the trial of a case can be considered where the ruling complained of was not duly excepted to.

9. The number of counsel who will be permitted to assist the State attorney in the prosecution of a criminal case, and engage in the trial thereof, must be determined by the trial court, and is a matter within the discretion of such court.

10. This court will take no notice of any fact which only appears in the record as a recital in a motion.

11. A written instrument was offered in evidence by the State, with proof that it had been fraudulently altered since it was executed. A State witness testified that he was familiar with the handwriting of the defendant, had often seen him write, and while it was difficult to state positively that the fraudulent alteration was in the handwriting of the defendant, yet upon good faith, and upon his knowledge, it was. Upon these facts, *held*, that a contention that the instrument was received in evidence without proof that the fraudulent alteration was in the handwriting of the defendant can not be sustained, as the proof of handwriting must always be more or less a matter of opinion.

12. Upon an indictment for embezzlement of moneys of his principal, coming to his hands as an agent, letters found in the office recently occupied and vacated by the defendant, and in letter-files kept by him, in the handwriting of the officers of such

principal, the same being a corporation, and touching the matter of the agency of the defendant, where such letters appear to have been invited by other letters from the defendant, and appear to have been acted upon in the course of the agency, are admissible in evidence against such defendant. They are relevant testimony upon the agency of the defendant, which was a material fact to be established in the case.

13. Counsel for the State during the progress of the trial several times made statements as to what they expected to prove during the course of the trial. Upon objection being made by defendant's counsel, the trial judge cautioned the jury that they must not regard such statements as evidence, and should only consider what was actually proven by the evidence in the case: *Held*, That if it be admitted that the statements objected to were improper to be made, the caution of the court to the jury, and the instructions given, cured the prejudice and divested such statements of any power to injure the defendant.

14. A witness at the trial, in April, 1896, testified that he was present when a Mr. Horney, a director of the corporation, principal of the defendant Thalheim, called upon said defendant at the office occupied by him (defendant) on September 18th, 1894, and demanded the books, papers and other property of the corporation, and that defendant turned over some of the property demanded, but refused to turn over other parts of it, claiming that they were his private property. On cross-examination the witness was asked: "Do you know whether or not Mr. Horney and Mr. Thalheim made a settlement of the affairs of that office?" This question not being limited to the occasion about which the witness had testified in chief, but being broad enough to cover any settlement within the knowledge of the witness made up to the very time the question was asked, was too general in its terms to be considered in cross-examination, and was properly excluded.

15. A defendant in a criminal case can not cross-examine a State witness about matters as to which he had not testified in his direct examination.

16. When the State has offered evidence of inculpatory statements made by the defendant, the defendant on cross-examination has the right to show other exculpatory statements made by him in the same conversation, and in reference to the same subject-

matter. The defendant in such a state of the case is entitled to have before the jury all that was said upon the subject upon the particular occasion, whether prejudicial or beneficial to him.

17. The fact that an agent who has embezzled his principal's funds has settled the matter and restored or returned the embezzled funds does not affect the question of his guilt.

18. The act under which the defendant was tried provides that evidence may be given of any embezzlement committed within six months after the time stated in the indictment. The effect of this act is only to exclude proof of an actual embezzlement not committed within the prescribed period. It does not exclude proof of any fact or circumstance which tends to prove the main issues in the case, for the reason that such fact or circumstance itself may have happened before the date alleged.

19. Upon an indictment for embezzlement of the money of a foreign corporation, proof that such corporation was a corporation *de facto*, doing business as a corporation in the corporate name set out in the indictment, is sufficient. It is not necessary that it should be proven to be a corporation *de jure*.

20. A charge of the court to the jury which admits of the construction that a defendant on trial for embezzlement could be convicted if the evidence shows that he embezzled other and different property than that for which he was indicted, is erroneous.

21. Under our statute (Rev. Stats., sec. 2897) upon an indictment for embezzlement of money "it shall be sufficient to maintain the charge in the indictment, and shall not be deemed a variance, if it be proved that any bullion, money, notes, bank-notes, check, draft, bill of exchange or other security for money, * * was fraudulently embezzled," but the indictment can only be sustained upon proof of embezzlement of some of the specific things mentioned in the statute. The defendant can not upon such an indictment be convicted because the proof shows the embezzlement of other assets or property not within the terms of the statute.

22. Under our statute in force at the time the offense in the present case is charged to have been committed, embezzlement of property of the value of one hundred dollars or more subjects the guilty party to a higher and greater punishment than embezzlement of property of a less value. Therefore, upon an

indictment which charged the value of the property embezzled as exceeding one hundred dollars, it is essential that the jury in a verdict of guilty should ascertain and fix the value of the property sufficiently to show whether it was one hundred dollars or more, or whether it was less than said sum, in order that the court may impose the punishment which the law prescribes for the offense.

23. A request by counsel in a criminal trial for a certain instruction to the jury is properly refused when there is no predicate for such instruction in the evidence in the case.

24. The court refused to give the following instruction to the jury, at the request of defendant's counsel, *viz:* "The court instructs the jury that it is incumbent upon the prosecution to prove every material allegation of the indictment as therein charged. Nothing is to be presumed or taken by implication against the defendant; the law presumes him innocent of the crime with which he is charged until he is proven guilty beyond a reasonable doubt by competent evidence. And, if the evidence in this case leaves upon the minds of the jury any reasonable doubt of defendant's guilt, the law makes it your duty to acquit him." Such refusal was not error. The proposition that "nothing is to be presumed or taken by implication against the defendant," does not correctly state the law. While the presumption upon the main vital fact in issue—the guilt or innocence of the defendant—whether he did the very act charged against him—is always in favor of innocence, it can not be said that nothing is to be presumed or taken by implication against him. As to collateral facts affecting the main question of guilt or innocence, the presumption of law is often against the accused.

25. The statute under which the indictment was drawn provides a punishment for "any * agent" who "embezzeles or fraudulently converts to his own use, or takes or secretes with intent so to do, * any property," etc. It is not necessary upon an indictment for embezzlement under such statute to allege that the same was done with intent to embezzle and fraudulently convert, etc. The intent refers only to the taking and secreting of the property, and it is necessary to allege such intent under the statute only where the indictment is for such fraudulent taking, secreting, etc.

26. Where all the essential elements of an offense are alleged in an indictment, the judgment should not be arrested after trial

and verdict for reason of any technical vagueness or uncertainty in such indictment.

Writ of Error to the Circuit Court for Marion county.

### STATEMENT.

The plaintiff in error, hereinafter called the defendant, was tried and convicted of the offense of embezzlement. The indictment, omitting the formal commencement and conclusion, alleged that the defendant, "Carl Thalheim, late of the county of Marion aforesaid, laborer, on the first day of May, in the year of our Lord one thousand eight hundred and ninety-four, with force and arms, at and in the county of Marion aforesaid, did embezzle and fraudulently convert to his own use certain money of the Anglo-Continental (late Ohlendorff's) Guano Works, a corporation created and existing under the laws of the Empire of Germany, of which corporation he, the said Carl Thalheim, was then and there the servant and agent, without the consent of said corporation, to-wit: eighteen thousand dollars, of the value of eighteen thousand dollars, of the money and property of said corporation, a more particular description of which is to the jurors unknown, which then and there came into the possession of him, the said Carl Thalheim, and was under his care by nature of said employment." While said indictment was pending, in vacation, sometime previous to the term of court at which he was tried, the defendant moved the court for an order that the State attorney furnish him with a bill of particulars in the case. Accompanying such motion was an affidavit of the defendant to the effect that the transactions between him and the Anglo-Continental Guano Works

involved large amounts of money, and that the accounts between said parties were complicated and intricate, and that the indictment simply alleged the embezzlement of a specified sum of money, giving no particulars as to how or when received, or from whom received, if received at all, or how the said amount of money was embezzled, if embezzled at all, and that from said indictment the deponent was wholly unable to prepare his defense to said action, and is not apprised of the specific offense intended to be proven at the trial of the cause; and that unless furnished with a bill of particulars in this cause, of the specific transaction intended to be proven on the trial, justice will not be done. The Circuit Judge denied the motion. In making such order the Circuit Judge, stated, in effect, that he did so because he considered that he had no authority to grant the motion, on account of a repeal of a former statute which the Circuit Judge regarded as vesting the only power in him to authorize the action requested. The order denying the motion for a bill of particulars was made February 19th, 1896. Afterwards, April 9th, 1896, the Circuit Court in making an order denying a motion for a new trial says that "in order that the Supreme Court may understand the matters as they appear to the undersigned judge, it is proper to state that when the application for a bill of particulars was presented February 19th, 1896, the State was represented by R. L. Anderson, Esq., who stated that the particulars of the alleged embezzlement were all contained in affidavits which were made and filed before Justice Clary of this District when the prosecution was started against this defendant, and that the State did not expect to go outside of these particulars at the trial."

At the trial, immediately upon the beginning of the taking of testimony, the defendant objected to Mess. H. Bisbee, Anderson and Hocker, O. T. Green and Edward Spencer, attorneys-at law, assisting the State attorney in the prosecution of the case. This defendant moved the court to restrict anyone from appearing for the State except the State attorney. This motion was upon the grounds, so far as they are necessary to be considered: 2d. The services of said counsel have not been procured by the State attorney with consent of this court. 3d. Said counsel have no authority to represent the State. 4th. Said counsel are not sworn in or under oath to perform the duties devolving upon them as assistants to the State attorney. 5th. Because an assistant to the State attorney has been sworn at this term of the court, as appears in the minutes of the court. Accompanying the motion was an affidavit of the defendant to the effect that the foregoing mentioned attorneys are the attorneys for the Anglo-Continental (late Ohlendorff's) Guano Works; that said Anderson & Hocker and O. T. Green were in the preliminary investigation representing the aforesaid corporation as their private attorneys, and that the names of Anderson & Hocker appear as attorneys of record of said corporation on both the common law and chancery side of this court. Upon the motion being presented, the State attorney informed the court that he had been in poor health for several months past, had not been able to prepare the case, and unless allowed assistance, would be unable to try the case, as it was a very complicated and difficult one, and requested the court that the attorneys named be sworn in as his assistants. The court then stated that there was upon the docket then on the first day of the term

four cases of embezzlement against the defendant, one for changing the record, four cases charging murder, and others, making fourteen cases in all. Under these circumstances the court permitted the State attorney to have the assistance desired.

After the verdict the defendant moved the court for a new trial upon various grounds. These grounds are, the verdict was contrary to the law and the evidence in the case; the action of the court already stated in denying the motion for a bill of particulars, and permitting attorneys to be sworn in as assistants to the State attorney, and others relating to the rulings of the court during the trial upon the admission or rejection of testimony, or its instructions to the jury. Most of them will be specifically noticed in the opinion.

The defendant also made a motion to arrest the judgment upon various alleged defects in the indictment and in the verdict.

*E. W. Davis, R. W. & W. M. Davis,* for Plaintiff in Error.

*William B. Lamar, Attorney-General, H. Bisbee,* and *R. L. Anderson,* for the State.

LIDDON, J.:

Upon the record before us twenty-nine assignments of error are made. The first error assigned is, that the court erred in overruling defendant's motion for a new trial. All of the grounds of such motion are also made subjects of other assignments of error, and such of them as are necessary to be considered will be passed upon in disposing of such other assignments.

The second error assigned relates to the refusal of
the application for a bill of particulars.  The Circuit
Judge in his written order denying the application ap-.
pears to have rested his refusal solely upon the want
of power in him to grant the application, while in his
order overruling the motion for a new trial he appears
to have exercised a discretion in the matter, and to
have refused defendant's application also upon the
ground that he was referred by the State attorney to
a place where a sufficient bill of particulars in the
case could be found.  In this apparent conflict of
reasons given we think it proper to consider the power
of the Circuit Judge in applications of this character.
There is no doubt that the indictment, in so far as it
alleges the act of embezzlement, is sufficient under
section 2897 Revised Statutes.   The portion of the
statute relevant to the present case and present ques-
tion thereof would read as follows:   "It shall be suffi-
cient to allege generally in the indictment the embez-
zlement    *    *    of money to a certain amount, with-
out specifying any particulars of such embezzlement."
Upon a motion to quash upon this point the indict-
ment under the statute should be sustained.  Although
this indictment upon the face of it does · not apprise
the defendant of the specific acts which constitute the
charge the State prefers against him, and although he
may be ignorant of what specific transactions will be
offered in proof to sustain the charge, yet it is held by
the courts that such indictments do not infringe upon
constitutional guaranties like that contained in the
11th section of our Bill of Rights, that "in all crimi-
nal prosecutions the accused shall have the right    *
*    *    to demand the nature and cause of the accusa-
tion against him."   Commonwealth vs. Bennett, 118

Mass. 443, text 452; Commonwealth vs. Wood, 4 Gray, 11; State vs. Rowe, 43 Vt. 265, text 267. In many cases the constitutional validity of such an indictment has been sustained upon the ground that it is within the general power and discretion of a court before which the case is pending, upon proper motion, to order that the State furnish the defendant such bill of particulars of the alleged offense as will give him notice of the specific acts which the State will offer in evidence as the essential facts of the crime charged. In State vs. Rowe, *supra*, it is said: "From a charge so general, it is evident that many cases may arise where the accused would labor under serious embarrassment in preparing his defense and defending against the prosecution, if compelled to go to trial without any information, except what could be inferred from the complainant alone, as to the number of offenses for which conviction would be claimed. In prosecutions under these provisions of the statute, we think the accused is entitled to a specification of the offense for which the government claims a conviction. * * * It has been ruled in this State that in this class of cases the accused is entitled to a specification of the offenses charged in this general form of complaint. * * It would seem that this ruling was made with the view of satisfying the provision of the 10th article of the Bill of Rights of our State Constitution, which gives the accused, in all prosecutions for criminal offenses, a right 'to demand the cause and nature of his accusation.' "

An indictment may contain only a general allegation of an offense, wanting in details, of which the defendant is justly entitled to be informed before trial, yet if it is in conformity with the statutory requirement

upon the subject, the court can not pronounce it ill upon a motion to quash. In such cases, according to unanimous authority, upon proper application the judge orders a bill of particulars, 1 Bish. Crim. Pro., sec. 643. The object of such a bill of particulars is not to supply a defect in the indictment (1 Bish. Crim. Pro., sec. 646), but to prevent a failure of justice which otherwise might occur. Commonwealth vs. Snelling, 15 Pick. 321. In the case last cited the general rule is stated thus: "Where, in the course of a suit, from any cause, a party is placed in such a situation that justice can not be done in the trial, without the aid of the information to be obtained by means of a specification or bill of particulars, the court, in virtue of the general authority to regulate the conduct of trials, has power to direct such information to be seasonably furnished, and in an authentic form." In Commonwealth vs. Giles, 1 Gray, 466, text 469, the rule is stated as follows: "It is now a general rule, perfectly well established, that in all legal proceedings, civil and criminal, bills of particulars or specifications of facts may and will be ordered by the court whenever it is satisfied that there is danger that otherwise a party may be deprived of his rights, or that justice can not be done." A special application of the rule to criminal cases was made in People vs. Bellows, 2 N. Y. Crim. Rep. 12, 1 Bish. Crim. Pro., sec. 643; U. S. vs. Bennett, 16 Blatch, 338, text 350. From the foregoing and other authorities hereinafter cited, we deduce the proposition that whenever an indictment is so general as to give the defendant inadequate notice of the charge he is expected to meet, the court on his application will require the prosecution to furnish him with a bill of particulars specifically

showing the nature of the charge against him. The defendant has a right to such bill of particulars only when the indictment does not give him adequate notice of the charge he is expected to meet. The power of the court to direct such bills of particulars does not depend upon any express statutory authority, but is included within the general power to regulate the conduct of trials in the just enforcement of the law. Wharton's Crim. Pl. & Pr., sec. 705; People vs. Jaehne, 4 N. Y. Crim. Rep. 161; State vs. Wooley, 59 Vt. 357; State vs. Davis, 52 Vt. 376. The following authorities support the proposition that an indictment for embezzlement alleging the offense merely in a general way is one upon which a bill of particulars should be furnished upon proper application of the defendant: Wharton's Crim. Pl. & Pr., p. 464; Bish. Crim Pro., sec. 645; Commonwealth vs. Bennett, *supra;* People vs. McKinney, 10 Mich. 54; Rex. vs. Hodgson, 3 Car. & P. 422; Rex vs. Bootyman, 5 Car. & P. 300. In view of these authorities we entertain no doubt that the Circuit Judge was mistaken when he conceived it to be beyond his power to make the order applied for, without express statutory authority. If he relied solely upon this point, and had refused to exercise any discretion whatever in the matter, his action would be clearly erroneous, for which the judgment should be reversed. Any other view of the law, it seems to us, would be in conflict with the section of the Bill of Rights of our State Constitution, hereinbefore quoted. While there is no doubt as to the power of the trial court to direct that a bill of particulars in a criminal case be furnished, yet the question whether it shall or shall not be furnished is within the reasonable discretion of the trial judge. Com-

monwealth vs. Giles, 1 Gray, 466; Commonwealth vs. Snelling, 15 Pick, 321; 1 Bish. Crim. Pro., sec. 643. The reference by the counsel representing the State to a paper filed in another court of inferior jurisdiction, in which the details of the offense were stated, was not the furnishing of a bill of particulars in the sense of the law. It should be furnished and filed in the case pending and the court in which application is made. In view of conclusions reached by us on other points in the case, it is not necessary to determine whether the facts stated by the Circuit Judge in overruling the motion for a new trial show a reasonable exercise of discretion in denying the application for a bill of particulars.

The third and fourth assignments of error relate to the ruling of the court permitting, upon request of the State Attorney, four attorneys to be sworn as assistant State Attorneys, and in such capacity take part in the prosecution. It is not seriously urged that the court did not have authority under section 1355 Revised Statutes to permit the prosecuting officer to obtain assistance in the case, or that the court exceeded its authority in permitting such assistance. The only contention upon this subject is, that it was erroneous to permit the State Attorney to procure as such assistants members of the bar who were retained by the corporation whose money the defendant is charged with embezzling. The question presented is, are counsel, employed or paid by private parties, allowed to assist the State Attorney in the prosecution of persons charged with crime. The question is a new one in this jurisdiction. Some reference was made to it in Eldridge vs. State, 27 Fla. 162, text 188-9, 9 South. Rep. 448, and Lambright vs. State, 34 Fla. 564, text

572, 16 South. Rep. 582, but it was not presented in such a shape that it could be determined. In the present case the allegations of the affidavit accompanying the motion are not as definite as they might be, yet we think sufficient appears to show that some of the attorneys objected to were interested and acting in the case at the instance and request of the Anglo-Continental (late Ohlendorff's) Guano Works (hereinafter called the foreign corporation), and the only natural presumption is that they were so engaged for some valuable consideration. As stated in Eldridge vs. State, *supra*, there is conflict in the authorities upon the subject. Upon full examination of the matter we find the overwhelming weight of authority is in favor of the practice. The only authorities found against it are those cited in the Eldridge case from Massachusetts, Michigan and Wisconsin and others from the same States. The following propositions are amply sustained by authority. A public prosecution must be conducted by the proper official representative of the State, and must not under any circumstances be placed under the entire management and control of private parties or their attorneys. It is proper, however, for the State Attorney, when there is no express statutory prohibition, to obtain, with the consent of the court, the assistance of other counsel, and other members of the bar are not incompetent to be engaged for such assistance and taking part in the trial by reason of being retained and compensated by the prosecuting witness, the party injured by the crime, or other private interests. When such assistants are employed in the case, the State Attorney should always remain present at the trial, and see that a public prosecution for a criminal offense does not degenerate

into a private persecution, and that the administration of the criminal law is not made a vehicle of oppression for the gratification of private malice, or the accomplishment of private gain or advantage. This rule has been held in States where provision exists for the employment of assistants to prosecuting officers at the public expense. The reason is stronger why it should be held applicable in this State where no provision is made for the payment of such assistants at public expense, and his compensation, if he receives any, must necessarily be paid by the State Attorney individually (Rev. Stat. sec. 1355), or by private parties interested in the prosecution. The latest utterance upon the subject called to our attention is that of the Supreme Court of North Dakota, in the recent case of State vs. Kent, 4 N. Dak. 577, 62 N. W. Rep. 631. This case contains such a forcible discussion of the subject, expressing views that we approve, that we yield to the temptation to insert it here entire, at the risk of unduly extending this opinion. The court said: "In England, criminal prosecutions were as a rule generally carried on by individuals interested in the punishment of the accused, and not by the public. The private prosecutor employed his own counsel, had the indictment framed and the case laid before the grand jury, and took charge of the trial before the petit jury. 1 Chit. Cr. Law, 9, 825. This system does not prevail in this State. Here, in each county, there is a public prosecutor, called the "State's Attorney" for that county. It is his duty to prosecute all criminal offenses triable in that county. He is paid a salary for that purpose out of the public funds. He is not allowed to receive any fee or reward from or on behalf of any prosecutor or other individual for services in any prosecution or

business to which it is his official duty to attend, nor be concerned as attorney or counsel for either party other than for the State or the county, in any civil action depending on the same state of facts upon which any criminal prosecution commenced, but undetermined, shall depend. Section 427, 433, Comp. Laws. We do not think that this change in policy indicates a purpose to exclude the counsel for interested persons from all participation in the prosecution. Such counsel can not initiate the proceedings, or conduct them. The control of criminal prosecution has been taken from private hands, and transferred to public functionaries chosen for that express purpose. But there is nothing in the statute to justify the conclusion that counsel employed by interested persons may not assist the public prosecutor, in case he and the trial judge deem this course proper. The fact that the State's Attorney who controls criminal cases is not allowed to receive any compensation from private prosecutors for the prosecution of a criminal case does not warrant the conclusion that no counsel paid by private persons shall be permitted to assist in the trial of such a case. It is one thing to have the prosecution entirely in the hands of one who may be influenced, because of a retainer, by the strong desire of his client to secure a conviction; but it is an entirely different thing to allow such an interested counsel to aid in the prosecution one who stands affected by no other motive than that of securing the punishment of guilt, and who has absolute control over the case. The law has removed criminal prosecutions from the control of private interests, but it has not excluded such interests from all participation therein. If no error is committed on the trial, we fail to see how an accused can be prejudiced

by the fact that those personally interested have em-
ployed private counsel to aid the public prosecutor.
Certainly, he should not be heard to complain of the
zeal of the private counsel, if such counsel has not al-
lowed his zeal to hurry him into error.   The best mode
of reaching the truth is by the strenuous contentions
of opposing counsel, each animated by the conviction
that the cause he has espoused is just.   The public
have some interests at stake in a criminal prosecution.
May all the zeal be displayed on one side, and none be
tolerated on the other?   The public interests demand
that a prosecution should be conducted with energy
and skill.   While the prosecuting officer should see
that no unfair advantage is taken of the accused, yet
he is not a judicial officer.   Those who are required to
exercise judicial functions in the case are the judge
and the jury.   The public prosecutor is necessarily a
partisan in the case.   If he were compelled to proceed
with the same circumspection as the judge and the jury,
there would be an end to the conviction of criminals.
Zeal in the prosecution of criminal cases is therefore to
be commended, and not condemned.   It is the zeal of
counsel in the court room, alone, of which the accused
can complain.   No decision can be found which ques-
tions the right of the prosecuting officer to consult
with, and receive all manner of aid, even during the
trial, from counsel for private parties, outside of the
court room.   And if such zeal in the court room, on
the trial, does not result in error, what conceivable
difference can it make whether such assistant was em-
ployed by the public, or by private persons?   May not
cross-examination of witnesses be conducted and ar-
guments to the court and jury be made, by one who is
as much convinced of the guilt of the accused as his

Thalheim v. The State of Florida.—Opinion of Court.

counsel is persuaded of his innocence?   The manner of
conducting the case in the court room can not work le-
gal prejudice to the accused, without resulting in error
for which the conviction will be set aside.   It is there-
fore of no legal importance what inspires the zeal of
the attorney who assists in the trial.   Whatever is done
to the injury of the prisoner by private counsel, for
which he can have no redress, is done out of court; for
instance, by concealing or fabricating evidence.   At
just this point, where the zeal of counsel employed by
private parties may be deadly to the accused, no kind
of safeguard is or can be thrown around him.   The
prosecuting officer may consult with, and be entirely
governed by the advice of such private counsel; and
yet the accused has no remedy, if the private counsel
does not participate in the trial.   If he does so partic-
ipate, his zeal works no more prejudice to the accused
than the zeal of any other equally able counsel who
may be employed by the public.   The cases all agree
that an assistant hired by the public may engage in the
trial without giving the prisoner any legal cause for
complaint.   Of course, the latter may think he is pre-
judiced because of being compelled to confront an ex-
ceptionally able and experienced prosecutor, but this
furnishes no legal ground for overthrowing the convic-
tion.   The question can be placed in a clear light by
the following statement of it:   Can a defendant in a
criminal case, who is obliged to submit to the zeal of
an assistant prosecutor employed by the public insist
that the zeal of an assistant counsel employed by in-
terested parties, shall not be displayed against him, al-
though it results in no error on the part of the prose-
cution in the management of the case?   We think
there is only one answer to this question, and that is

against the right of the accused to complain in either case, so long as no error has been committed by the assistant on the trial. The rule is different, however, in Michigan and Massachusetts, under statutes very similar to ours. Meister vs. People, 31 Mich. 99; Sneed vs. People, 38 Mich. 251; People vs. Hurst, 41 Mich. 328, 1 N. W. 1027; People vs. Bemis, 51 Mich. 422, 16 N. W. 794; Commonwealth vs. Gibbs, 4 Gray, 146. The reasoning of Judge Campbell, in Meister vs. People, while very plausible, does not convince us that there should be interpolated into the statute as implied prohibition against counsel employed by interested parties assisting in the prosecution. We are unable to discover in the statute any other policy than that of transferring the control of criminal prosecutions from private to public hands. We think that the control of the public prosecutor over the proceedings is a sufficient guaranty that the accused will not be made the innocent victim of overzealous prosecution by private persons. While aware that Judge Campbell has made out a strong case in support of his view, we can not discover in the legislation of this State the evidence of a policy hostile to the quite general practice of allowing the prosecuting officer to be assisted by counsel retained by those having a personal interest in the prosecution distinct from that of the general public."

The following authorities are also in full accord with the opinion from which the above liberal extract is taken: 1 Bish. Crim. Pro., sec. 281; State vs. Shreves, 81 Iowa, 615, 47 N. W. Rep. 899; State vs. Fitzgerald, 49 Iowa, 260, S. C. 31 Am. Rep. 148; Keyes vs. State, 122 Ind. 527, 23 N. E. Rep. 1097; State vs. Wilson, 24 Kansas, 189, S. C. 36 Am. Rep. 257; State vs. Wells,

54 Kansas, 161; 37 Pac. Rep. 1005; Polin vs. State, 14 Neb. 540, 16 N. W. Rep. 898; Gardner vs. State, 55 N. J. L. 17, 26 Atl. Rep. 30; State vs. Orrick, 106 Mo. 111, 17 S. W. Rep. 176; People vs. Powell, 87 Cal. 348, 25 Pac. Rep. 481; Burkhard vs. State, 18 Texas App. 599; State vs. Bartlett, 55 Maine, 200.

It was also urged in the oral argument that it was error to "swear in" the attorneys procured by the State Attorney as assistants. Referring to the statement of facts accompanying this opinion it will be seen that it was made one of the grounds of objection to private counsel assisting in the prosecution that they were "not sworn in or under oath to perform the duties devolving upon them as assistants to the State Attorney." Afterwards, the State Attorney, in compliance with the views of defendant, and evidently with the desire to accommodate him, requested the court to "swear in" the counsel procured to assist in the prosecution, and they were sworn in as assistants in the case. No exception was taken to this action. On the contrary, the only objection upon the subject was that the assisting counsel were not sworn in. The nature of the oath administered to such attorneys is not shown by the record. There being no exception to the ruling of the court, no question of any error in the administration of the oath is presented for our consideration.

It was also urged with great earnestness in the oral argument that too many assistants were allowed the State Attorney. The number of counsel which the court will permit to engage in the trial, assisting the State Attorney, must be determined by the trial court. It is a matter within the discretion of such court. In view of the general facts and circumstances of this case, including the fact that the very motion which seeks to

restrict the number of counsel for the State, shows the names of four able counsel appearing for the defendant, we cannot see any abuse of such discretion.

It was also argued that the assistants of the State Attorney should not have been permitted to take part in the trial of the case, because one Neill M. Allred had already been "sworn" an assistant to the State Attorney at the same term of the court. Without stating what effect, if any, the previous "swearing in" of Mr. Allred would have upon the determination of the question, it is sufficient to say that it does not appear of record otherwise than by a recital in the motion that he had been so "sworn in," or was acting as assistant to the State Attorney. We have often determined that we can not take notice of any fact which only appears in the record as a recital in a motion. Thomas vs. State *ex rel.*, 37 Fla. 378, 20 South. Rep. 529.

The fifth assignment of error refers to the admission in evidence of a contract of sale of phosphates by the Land Pebble Phosphate Company to the defendant as agent of the foreign corporation. It is deemed necessary to remark here that the embezzlement alleged against defendant was claimed by the State to have been committed of funds of the foreign corporation entrusted to him to be used in the purchase of phosphates for its account. In the matter of this particular contract it was claimed, with evidence tending to support the claim, that defendant had purchased for his principal, to be shipped to it, a large lot of phosphate, to be delivered free alongside the vessel at Port Tampa, and that the contract included a stipulation providing that the sellers should pay wharfage. The State claimed that this contract had been fraudulently altered by erasing the word *sellers*, and inserting the

word *buyers*, and in such altered state forwarded by the defendant to the foreign corporation, and that by means of such fraudulent alteration of the contract the defendant had been enabled by falsifying his account to correspond with the contract, to wrongfully convert to his own use $875, being the amount of wharfage on a cargo of phosphate shipped on the steamer Atlantic. The contract in its altered condition, as it was received from the London office of defendant, was offered in evidence. Several objections were urged against the admissibility of the contract in the trial court, but only one is argued here, *i. e.*, that the paper was admitted without proof that the fraudulent alteration was in the handwriting of defendant. As a matter of fact, we find that proof of the handwriting of defendant was offered and received before the paper was received in evidence. Anton Trubenbach, a State's witness, who stated that he was familiar with the handwriting of the defendant, and had often seen him write, testified that while it was difficult to state positively that the interlined word was the handwriting of defendant, yet upon good faith and upon his knowledge it was. The proof of handwriting must always be, more or less, a matter of opinion, and we think the proof offered sufficient to meet the objection now urged.

The seventh assignment of error is predicated upon the admission of certain letters in evidence against the objection of the defendant. These letters were proved to be signed in the handwriting of officials of the corporation alleged to have been defrauded. They were submitted in connection with other evidence to the effect that the defendant from the early part of 1893 to September 18th, 1894, was the resident agent of the foreign corporation in Florida, and was furnished by

it with a large amount of funds to use in buying phosphates for its account. On the date last named the defendant was relieved as such agent, and turned over the books and papers, or a portion of them, to the representative of the foreign corporation who demanded and received them from him. The letters in question were addressed to the defendant at Ocala, Florida, and were found in the office recently occupied and vacated by him, and in letter files kept by him. There were four of them, all written during the continuance of the agency, and in reference to matters connected therewith. One of them expressly states that it is in answer to a letter addressed to the foreign corporation by the defendant. The objection urged to such letters was that they were irrelevant. It is argued that the mere fact that a party is found in possession of a letter, without proof that he answered or invited it, or in some way acquiesced in its contents, does not make such letter admissible in evidence against him. The authorities sustain this general proposition. Wharton's Cr. Ev., sec. 682, and cases cited. An examination shows that the material facts of these cases are very different from those under present consideration. They were either cases in which there was no proof of the genuineness of the letter, or that they had ever been opened or read by the defendant, or, if he had knowledge of the contents, that he had in any way acted upon or acquiesced in the same. In nearly every case the letters held inadmissible could not be called part of the *res gestæ*, and tended only to charge the party receiving it with guilt in reference to a past transaction. In such cases it has been said that the maxim, *qui tacet consentire videtur*, which is applicable to verbal conversations where a statement is made in

a party's presence and not denied, has no application to facts stated in a letter which a party is not bound to answer or deny. People vs. Green, 1 Parker's Cr. Rep. 11; Fairlie vs. Denton, 3 Car. & P. 103; Learned vs. Tillotson, 97 N. Y. 1. The present case differs from those cited, in that we have not here the isolated fact of the receipt of the letters. As stated, one of the letters expressly states that it is in answer to one received from the defendant. Some of them contained instructions as to how he should perform the duties of his agency, and these instructions he appears by other evidence, to some extent at least, to have followed. Wharton's Cr. Ev., sec. 644, states the rule as follows: "A letter addressed to a party can not be admitted as proof against him unless it be proved that he received it and acted on it, or in some way invited it." In the celebrated case of Spies vs. People, 122 Ill. 1, text 235, the court held that a letter coming from the possession of the defendant was admissible because it appeared from the face of the letter offered that the defendant had invited it. In the trial of John Horne Tooke; 25 Howell's State Trials, 130, Lord Chief-Justice Eyre said that letters found in the possession of a defendant were *prima facie* evidence, but that their effect would depend much upon the circumstances, whether answers to them could be traced, or whether anything had been done upon them. In The Queen vs. Cooper, L. R. I. Q. B. Div. 19, letters received by a defendant in answer to a fraudulent advertisement published by him were admitted in evidence. Some were admitted that had not actually come into his hands, but had only arrived at the postoffice at which he received his mail. In view of these authorities we

13

think there is enough proof of acquiescence and of action based upon the letters on the part of the defendant to justify their being received in evidence, and to make the rule stated inapplicable to them. They were certainly not irrelevant upon the question whether the defendant was an agent of the foreign corporation, which was a material fact to be proven in the case. 3 Rice on Evidence, p. 743; Rapalje on Larceny, sec. 389.

The eighth assignment of error covers objections made by the defendant in the court below to certain statements made by counsel for the State as to what they expected to prove during the course of the trial. It is admitted in the brief for the defendant (plaintiff in error here) that the court, when the objection was made, cautioned the jury that they must not regard such statements as evidence, and should only consider what was actually proven by the evidence in the case. If we admit that the statements objected to were improper to be made (Dowda vs. State, 74 Ga. 12), the caution of the court to the jury and the instructions given them divested such statements of any power to injure the defendant, and cured the prejudice, if any, caused by their being made. 1 Thompson on Trials, sec. 960.

On cross-examination of Anton .Trubenbach, a State's witness, the defendant's counsel asked him: "Do you know whether or not Mr. Horney and Mr. Thalheim made a settlement of the affairs of that office?" The question was objected to by the State's counsel upon the grounds (1) that it was not in cross-examination, and (2) that no settlement between the parties would bind the State of Florida. The objections were sustained. The ruling sustaining them is

made the basis of the tenth assignment of error.    At
the time this question was asked the witness was upon
the stand for the second time.    Upon the first examina-
tion he had testified that he was present September
18th, 1894, when Mr. Adolphus Horney, a director of
the London office of the foreign corporation called
upon the defendant at the office then and before occu-
pied by him (defendant) at Ocala, Florida, and de-
manded the books and papers and other property of
the corporation; that defendant then turned over the
office with some of the books and papers to said Hor-
ney; others he refused to turn over, saying that they
were his private property.    Upon this first examina-
tion he was cross-examined by defendant's counsel as
much as they desired.    The examination of other
witnesses intervened before Trubenbach was called the
second time.    This time he identified certain letters
and papers as being in the handwriting of defendant,
and other papers as being in the handwriting of offi-
cials of the corporation, sent from London to Ocala.
The only reference in this examination to Mr. Adol-
phus Horney was the identification of a book offered
in evidence as one that was delivered by the defend-
ant to Mr. Horney when the other property was de-
livered, September 18th, 1894.    There is no ground
whatever for a claim that the question was in cross-
examination of anything testified to by the witness
Trubenbach on the direct examination the second time
he was called as a witness.  If it be that the defendant
had the right to again cross-examine the witness in
reference to the matters of the first examination, and
about which the witness had been already cross-ex-
amined, we consider the question too general in its
terms to be considered in cross, even of the first ex-

amination. The interrogatory was not limited to any settlement between the defendant and Mr. Horney at the time of the surrender and delivery of the office by the defendant, but would cover any settlement within the knowledge of the witness made to the very time the question was asked.

The eleventh assignment of error is based upon a refusal of the court to permit defendant's counsel to ask the witness Trubenbach the following question on cross-examination: "Is it not true that while Mr. Horney was here on that business, Mr. Thalheim took him to each of the phosphate people in this locality with whom he had been dealing, and got a renewal of all his contracts with those phosphate people for Mr. Horney ?" The question was objected to as being irrelevant, and not being in cross-examination. We think the objection well taken. The witness had not testified to anything whatever in connection with any renewal of contracts with phosphate people by Mr. Horney, or of any act whatever of the defendant in reference to such renewal of contracts. The defendant could not cross-examine him about matters as to which he had not testified in the direct examination. Williams vs. State, 32 Fla. 315, 13 South. Rep. 834; Adams vs. State, 28 Fla. 511, 10 South. Rep. 106; Tischler vs. Apple, 30 Fla. 132, 11 South. Rep. 273.

B. Arentz, a witness for the State, upon his direct examination testified, among other things, in substance, that he had a conversation with the defendant; that they were comparing notes, and that he thought defendant said in that conversation that he had made $40,000, and that he made it in phosphate; would not swear whether defendant did or did not say that he made this sum out of the Anglo-Continental (late

Ohlendorff's) Guano Works, but that he said he made it out of phosphate business. Witness did not know defendant to be engaged in phosphate business on his own account, but only as agent of the Anglo-Continental (late Ohlendorff's) Guano Works. On cross-examination this witness was asked whether the "conversation with defendant was after the settlement between him and Mr. Horney?" He was also asked: "Whatever dispute Mr. Horney and Mr. Thalheim had, had they settled?" These questions were objected to by the State as being inadmissible, and not in cross-examination. These objections were overruled, and the witness testified, in substance, that the conversation he had been testifying about was after the defendant and Mr. Horney had a settlement; that defendant told him that everything was settled up. The record further shows that after the evidence had all been submitted, and one argument for each, the State and the defendant, had been made to the jury, the question arose whether counsel for the defendant would be allowed to argue the question before the jury of a settlement predicated upon the testimony of the witness Arentz. The court then stated to counsel that he did not regard the testimony of Arentz as competent, and that he would not permit argument of that question before the jury, predicated upon such testimony, and that he would so instruct the jury. This ruling was excepted to. The court then withdrew the evidence of Arentz as to what the defendant told him about the settlement, from the consideration of the jury, but stated to the counsel for the defendant that if they had been misled in any way by the previous ruling of the court, that he would permit them to introduce any evidence that they might desire for the defense.

After consultation, defendant's counsel announced that they had no evidence to offer. The ruling of the court excepted to is made the foundation of the thirteenth assignment of error. We consider it as presenting the question of the admissibility of the evidence which was withdrawn by the court from the consideration of the jury. The testimony was proper cross-examination. The witness upon direct examination had testified to statements made by the defendant. The cross-examination referred to the same conversation, and to other statements made by the defendant in connection with those testified to by the witness in his examination in chief. Williams vs. State, *supra*, and other decisions of this court therein cited. The Circuit Judge in excluding this testimony announced that he did so "upon the doctrine that a party is not allowed to produce evidence of his own declarations to another party with reference to an offense with which he is charged, after the offense has been committed." As a general proposition, the rule stated by the Circuit Judge is undoubtedly correct. If the defendant had offered to prove his statements to the witness Arentz as original evidence, such evidence would have been clearly inadmissible. The case is entirely different when the State has offered evidence of inculpatory statements made by the defendant, and the defendant on cross-examination seeks to show other exculpatory statements, or statements deemed exculpatory, made in the same conversation in reference to the same subject-matter. The general rule laid down by standard authorities in such cases is that the defendant is entitled to have before the jury all that was said upon the subject upon the particular occasion, whether prejudicial or beneficial to him.

The State having opened the door by proving a part of the conversation, it can not close it upon the defendant so that he can not offer the other part of the conversation which relates to the same subject-matter. The whole conversation should be before the jury, and they should determine what weight and effect should be given to the whole conversation. 1 Bish. Crim. Pro., sec. 1241, and authorities cited; Wharton's Crim. Ev., sec. 688; 1 Greenleaf on Evidence, sec. 218; Haisten vs. Hixen, 3 Sneed, 691; State vs. Worthington, 64 N. C. 594; Berry vs. Commonwealth, 10 Bush. 15; State vs. Branstetter, 65 Mo. 149; Massey vs. State, 1 Texas App. 563; Williams vs. Keyser, 11 Fla. 234. The striking out of this testimony of Arentz was technically erroneous but would not be reversible error. The sole purpose of such testimony, however, was to prove that the defendant had, subsequent to his embezzlement of his principal's money, settled the matter, or restored and returned the embezzled funds. The guilt of the defendant remained the same whether a settlement had or had not been made. Repentance and full restoration of the money embezzled could not have changed the verdict. People vs. Royce, 106 Cal. 173, 39 Pac. Rep. 524; State vs. Pratt, 98 Mo. 482, 11 S. W. Rep. 977; Robinson vs. State, 83 Ga. 166, 9 S. E. Rep. 610; United States vs. Harper, 33 Fed. Rep. 471.

The sixteenth alleged erroneous ruling is the overruling of an objection of the defendant to a question asked a State witness as to how much money the defendant had on deposit in the Merchants National Bank of Ocala on April 21st, 1894. The objection was that it relates to a transaction occurring on a date prior to that named in the indictment. The statute under

which the prosecution was being conducted provides that evidence may be given of any embezzlement committed within six months after the time stated in the indictment—Revised Statutes, sec. 2897. Under this statute evidence could not be received of any act of embezzlement committed before May 1st, 1894, the date laid in the indictment. The evidence objected to was not offered for the purpose of showing a substantive act of embezzlement committed before such date, but only as proof of a circumstance which, taken into consideration with other evidence in the case, tends to show a specific act of embezzlement within the period provided by the act, and was, therefore, proper to be received in evidence. The act only excludes proof of an actual embezzlement not committed within the period prescribed. It does not exclude proof of every fact or circumstance which tends to prove the main issues in the case, for the reason that such fact or circumstance itself may have happened before the date alleged. The case of Brevaldo vs. State, 21 Fla. 789, was not a case of embezzlement, but the principles determined there throw some light upon the present question. The authorities even go so far as to permit proof of other acts of embezzlement, beside those put in issue by the indictment, when such acts tend to show the fraudulent intent of the defendant in committing the specific embezzlement for which he is being tried. 3 Rice on Evidence, p. 743, sec. 460, and authorities cited.

The eighteenth assignment of error is predicated upon an instruction of the court to the jury, to the practical effect that if it was proven beyond a reasonable doubt that the Anglo-Continental (late Ohlendorff's) Guano Works was doing business under that

name as a corporation, it was sufficient proof of the corporate existence of said corporation. The twenty-first assignment refers to an instruction to the effect that similar proof that said company was a corporation *de facto*, and did business as a corporation, was sufficient proof of corporate existence. It is insisted upon the part of the plaintiff in error that corporate existence should be proven by evidence that such company was a corporation *de jure*. The contention can not be sustained. In Duncan vs. State, 29 Fla. 439, 10 South. Rep. 815, it was held under an indictment for the wilful and malicious burning of a railroad bridge alleged to be the property of a corporation, that it was sufficient to prove that such corporation was a corporation *de facto*, in the exercise of corporate functions and franchises, whether it was a corporation *de jure* or not. The present case is attempted to be distinguished from the case cited. The distinction is not well taken. The same rule will apply to embezzlement, larceny and kindred offenses. The very language of the instructions complained of has been upheld in a great number of cases. In State vs. Grant, 104 N. C. 908, 10 S. E. Rep. 554, in an indictment for larceny of the property of a corporation it was held that it is not "necessary to produce the charter of an incorporated company to prove the fact of incorporation. It is sufficient if it is established by other testimony that it carried on its business in the name set out in the indictment, and was well known by that designation." This ruling was in language quoted from Roscoe's Crim. Ev., 868, and numerous other authorities are cited as being to the same effect. The same proposition is also stated in Rapalje on Larceny, sec. 151, and other authorities are cited. That the incorporation of the company whose

funds are alleged to have been stolen or embezzled is
sufficiently proven by showing that it is a corporation
*de facto*, and doing business as such, is established by
a great number of authorities, a few of which are: Ra-
palje on Larceny, sec. 151; People vs. Barric, 49 Cal.
342, and other California cases cited in the text; Smith
vs. State, 28 Ind. 321; 2 Bish. Crim. Pro., sec. 752;
State vs. Hopkins, 56 Vt. 250; Shinn vs. Common-
wealth, 32 Gratt. 899. In State vs. Collens, 37 La.
Ann. 607, the charge was the embezzlement of funds
of a foreign corporation, and the court said: "In
prosecution for embezzlement of funds of a foreign cor-
poration, it is sufficient to prove the *de facto* existence
of the corporation, and it is not essential to prove the
law of the State under which it was incorporated and
the conformity of the charter thereto."

The nineteenth assignment is in reference to a charge
of the court given the jury at the request of the State.
The portion of such charge which is especially urged
as being erroneous is as follows: "It must appear
from the evidence that the moneys, funds, credits or
assets of the corporation, alleged to have been embez-
zled, were, previously to their wrongful appropriation,
lawfully in the possession and custody of the defend-
ant, and that they were, while so held by him, wrong-
fully converted to his own use. It is not, however,
necessary that he should have been in the exclusive
custody or possession at the time of the conversion to
his own use, in order to constitute the offense. If the
evidence establishes that the business and assets of the
corporation were actually or practically intrusted to
the care and management of the defendant, so that by
virtue of his position as servant, or agent, he had not
merely access to, or a constructive holding of, but such

actual custody of the funds, moneys and credits of the corporation as enabled him to have and exercise control over the same, that would place him in the lawful possession of said funds or other property; and, if, while so lawfully in possession of such assets, funds and credits, or other property, committed to his care and custody for the benefit of the Anglo-Continental (late Ohlendorff's) Guano Works, he wrongfully converts any part or portion of said assets to his own use with intent to injure or defraud the said corporation, he would thereby commit the offense of embezzlement. If, therefore, any property of the said corporation, whether consisting of money, funds, credits or bills receivable, or other assets are shown by the proof to have been in the defendant's possession as aforesaid in his capacity as servant, or agent of the Anglo-Continental (late Ohlendorff's) Guano Works, so that he held the same for and on account of, or in trust for, the benefit of said corporation; and if it is further shown to your satisfaction beyond a reasonable doubt that while holding such moneys, funds or other property under and by virtue of his said position, employment or relation to the corporation, the defendant wrongfully and intentionally converted the same, or any portion thereof, to his own use, with intent to injure or defraud the said corporation, he would be guilty of the crime of embezzlement." The indictment distinctly charges the defendant with the embezzlement of money. Section 2897 Revised Statutes provides that upon such indictment "it shall be sufficient to maintain the charge in the indictment, and shall not be deemed a variance, if it be proved that any bullion, money, notes, banknotes, check, draft, bill of exchange or other security for money, * * was

fraudulently embezzled," etc. It will be noted that all of the things mentioned as provable under the head of money are either bullion, which means uncoined gold and silver in the mass, or foreign or uncurrent coin, or things that pass current or in business tran- sactions, are used as a substitute for money. Ele- mentary rules of criminal law provide that the proof in criminal cases must correspond with the allegations of the indictment and be confined thereto. Under the indictment under which the trial was had the defend- ant could not be convicted unless he had embezzled some of the specific things prescribed by the statute. Assets generally, and property generally, are not in- cluded within the terms of the statute. The instruc- tions complained of are, therefore, admitted of the construction by the jury that the defendant could be convicted for the embezzlement of other and different property than that for which he was indicted, and were, therefore, erroneous.

The court also instructed the jury as follows: "You are not required under the evidence in this case to find that the exact amount stated in the indictment was embezzled. If, under the circumstances and condi- tions already mentioned, you find that the defendant converted to his own use money, funds or assets of the said corporation, no matter how small the amount may have been, if shown by the evidence in the case, it will be sufficient to sustain a verdict of guilty under this indictment. Nor are you required in your verdict, if you find the defendant guilty, to specify the exact amount so embezzled." Embezzlement under the statute upon which the indictment in this case was found is punished the same as if the party had been convicted of larceny. Revised Statutes, sec. 2457. There fore,

under the act in force at the time the offense is charged to have been committed, embezzlement of property of the value of one hundred dollars or more may be punished by imprisonment in the State prison not exceeding five years, or in the county jail not exceeding twelve months, or by fine not exceeding one thousand dollars. Revised Statutes, sec. 2440. Embezzlement of property of the value of less than one hundred dollars may be punished by imprisonment not exceeding six months in the county jail, or by fine not exceeding one hundred dollars. Revised Statutes, secs. 2351, 2441. Therefore, in prosecutions for embezzlement, like the case before us, it is essential to ascertain the value of the embezzled property, in order to inflict the penalty which the law prescribes for the offense. Therefore, the charge complained of was erroneous. A verdict of guilty under such instructions would subject the defendant to the punishment provided for the highest grade of offense, when he was in fact only guilty of the lower grade, and subject to a milder penalty, of which lower grade it was the intention of the jury to convict him. Therefore, instead of the instructions given, such instructions should have been given to the jury as in the event of their finding the defendant guilty only of the lower grade of the offense, they could so express it in their verdict, and thus shield the defendant from the greater punishment provided for the higher 'grade of the crime. Williams vs. People, 24 N. Y. 405; Rhodihan vs. People, 5 Parker's Crim. Rep. 395. The instructions given would have been correct if the same penalty was provided for all embezzlements of the kind charged against the defendant, without reference to the amount thereof. When the punishment depends

upon the amount embezzled, it becomes important for the court to know such amount as ascertained by the verdict of the jury; otherwise it can not tell what penalty the law requires to be imposed. In the present case the court could not determine that it had the power to sentence the defendant to imprisonment in the State prison until it had been determined by the verdict that the amount of the embezzlement exceeded one hundred dollars. From the verdict under the charge of the court it does not necessarily follow that the defendant has been convicted of the embezzlement of property exceeding one hundred dollars in value, yet he has been sentenced to imprisonment in the State prison, which could not have been done except upon such conclusion. Ray vs. State, 1 G. Greene (Iowa), 316, S. C. 48 Am. Dec. 379; State vs. Redman, 17 Iowa, 329; Highland vs. People, 1 Scam. 392; Locke vs. State, 32 N. H. 106; Miles vs. State, 3 Texas App. 58; State vs. Herring, 1 Brev. 159. The charge may not be technically incorrect in stating that the jury need not specify the exact amount embezzled, but was evidently misleading. It is not essential to state the exact value of the property fraudulently converted, but it ought to be stated whether it is less than one hundred dollars, or whether it is that amount or more. This conclusion is reached with reference to the Revised Statutes under which prosecution was had, and not to the amendments thereto. Acts 1895, pages 159-160.

The twenty-eight assignment relates to the refusal of the court to give some instructions requested by the defendant. One of these was the fourth, as follows: "If you believe from the evidence that a full and fair settlement was had between the defendant

and the Anglo-Continental (late Ohlendorff's) Guano Works at the proper time and in due course of the agency, and if, in said settlement, a fair disclosure was made by defendant and a proper accounting and adjustment made and agreed upon, then you can not find the defendant guilty under the indictment." This instruction was properly 'refused. There was no evidence in the case to which it was applicable. Even if the evidence as to defendant's statements to the witness Arentz about a settlement had not been stricken out, it would not be a sufficient predicate for the charge asked for. Even if we admitted that such evidence was affirmative proof of a settlement, it was only as to the bare face of a settlement. The time, date, terms or nature of such settlement were not stated. It afforded no predicate for a charge upon the subject of "a full and fair settlement at the proper time and in due course of agency," or of a "fair disclosure or proper accounting and adjustment."

The sixteenth instruction requested by the defendant was as follows: "The court instructs the jury that it is incumbent upon the prosecution to prove every material allegation of the indictment as therein charged. Nothing is to be presumed or taken by implication against the defendant; the law presumes him innocent of the crime with which he is charged until he is proven guilty beyond a reasonable doubt by competent evidence. And, if the evidence in this case leaves upon the minds of the jury any reasonable doubt of defendant's guilt, the law makes it your duty to acquit him." This instruction states correct propositions of law, except that phrase which is in the following words: "Nothing is to be presumed or taken by implication against the defendant." While the

presumption upon the main vital fact in issue—the guilt or innocence of the defendant—whether he did the very act charged against him, is always in favor of innocence, it can not be said that nothing is to be presumed or taken against him by implication. As to collateral facts affecting the main question of guilt or innocence, the presumption of law is often against the accused. It is not necessary to give many, but we give a few, illustrations of the presumptions which are always against the defendant; he is presumed to be sane, to have intended the natural consequences of his acts, from the perpetration of a fraudulent act to have had a fraudulent intention, etc. Lawson on Presumptive Evidence, p. 493 *et seq.;* Rapalje on Larceny, p. 251; 1 Bish. New Crim. Law, sec. 734; 1 Bish. Crim. Pro., sec. 1096 *et seq.*

The twenty-ninth assignment of error is, that the court erred in overruling defendant's motion in arrest of judgment. This motion is predicated upon alleged defects in the indictment. The statute under which this indictment was drawn says that if any   *   agent * embezzles or fraudulently converts to his own use, or takes or secretes with intent so to do,   *   any property, etc. It is argued that there should under the statute have been an allegation in the indictment as to the intention with which the embezzlement was done. We construe the phrase "with intent so to do" to refer to the taking or secreting of property. That it, construed with other portions of the statute, was intended to provide a penalty for the taking and secreting of property by a party with the intent to embezzle it or convert it to his own use. The phrase does not refer to the act of embezzlement. To so construe it, we would have a nonsensical provision mak-

ing it criminal for a party to embezzle and fraudulently convert property to his own use with the intent to embezzle it or fraudulently convert it to his own use. State vs. Combs, 47 Kansas, 136, 27 Pac. Rep. 818. Many authorities are cited by counsel to the effect that where a statute makes the intent with which the act is done a part of the description of the offense, that the indictment should allege that the act was done with the criminal intent. These authorities have no bearing upon the present indictment. The act (Rev. Stats., sec. 2897) says "it shall be sufficient to allege generally in the indictment the embezzlement, fraudulent conversion * of money to a certain amount, without specifying the particulars of such embezzlement." They would be applicable to an indictment for taking and secreting the property with the intent to embezzle it, and in such a case, according to such authorities, it would be essential to charge the intent with which the act was done. But as the indictment is for the embezzlement itself it is not necessary to charge the intent with which the act was done. Rapalje on Larceny, sec. 383.

The next objection urged against the indictment is, that it is not sufficiently definite as to the place where the offense was committed. That two places having been mentioned in the indictment, it does not appear that the expression "then and there," when used in the latter part of the indictment, does not refer to the Empire of Germany, and whether it does not charge essential portions of the offense to have been committed in the foreign jurisdiction. The indictment is not so clear and definite as it should be in this respect, and does not commend itself as a precedent. The de-

14

fendant plead to it and went to trial upon it, and we think it sufficient in form to support a judgment upon a verdict rendered upon it. In Connor vs. State, 29 Fla. 455, 10 South. Rep. 891, where the indictment was similar to the present one, but was far more indefinite and uncertain, the point arose on a motion to quash before pleading. This court has been liberal in allowing motions in arrest of judgment for defects in the indictment upon which the trial was had, and some of the older reports announce a liberal doctrine in reference to such motions. Murray vs. State, 9 Fla. 246. An examination of the facts of these cases, however, will show that no judgment has been arrested in this State after trial simply because the indictment was technically vague and indefinite. The judgment has only been arrested where the indictment has omitted a material allegation of some essential element of the offense. Stevens vs. State, 18 Fla. 903; Anderson vs. State, 38 Fla. ——, 20 South. Rep. 765.

In preparing this opinion several assignments of error which have been argued before us have not herein been specifically passed upon. Unless it be supposed that we have overlooked them, we deem it proper to say that we have omitted to state herein our conclusions upon them for several reasons. Among such reasons are, that some of them are subject to the same principles and reasoning stated and employed in disposing of others, and others of them did not seem to require serious consideration.

The errors stated the judgment and sentence of the Circuit Court is reversed and a new trial awarded.