Phillips, J.
Heard, on motions to quash and demurrers.
.Many of these cases involve the requisite of certainty in statement, and sufficiency of description in the indictments, and I desire at the outset to advert to the requirements of the Constitution and the laws in that regard.
■The Bill of Rights provides that “no person shall be held to answer for a crime, unless on presentment or indictment. ’ ’ And, “the party accused shall be allowed to demand the nature and cause of the accusation against him.”
In considering this constitutional provision, the Supreme Court has held that the indictment must aver all the material facts which, under the statute creating the offense, are essential to constitute the crime; and these must be averred with such reasonable certainty -that the court may see, without going outside of the record, that a crime has been committed, and that the accused may be advised, by a copy of the indictment which must be given him, just what he may expect to meet on the trial.
Another reason assigned by some courts for this requirement of'particularity in an-indictment is, that it may appear to the *131 court, from inspection of .the indictment, that the grand jurors “have not gone upon insufficient premises.”
The grand jurors deal with both law and facts, and the facts found by them must be stated with such certainty and particularity that it may appear therefrom that they have not made a wrong application of the law.
This legal requirement of reasonable certainty in charging a crime is not a matter of sentiment, nor is it a matter of favor to the accused, nor does it rest upon the principle that requires strict construction in favor of the accused and against the public. It is based upon the plainest principles of right and fairness.
Not all men that are indicted are guilty; innocent men may be charged with crime and put upon trial. A guilty man charged with crime may know full well what he is- to meet upon trial, without particularity in the indictment. Not so with an innocent man; and since there arises no presumption of guilt, the government must treat every accused man as if he were innocent, until a verdict removes the presumption of innocence.
Again, certainty in the charge facilitates the trial of the ease; for unless the acts and transactions involved are reasonably identified and distinguished, the court can not admit and exclude evidence with certainty and fairness.
A number of these indictments charge the obtaining of money or property by means of false pretenses. The language of Section 7076, Revised Statutes, involved in these charges is this, 1 ‘Whoever by any false pretense, with intent to defraud,’ obtains from any person anything of value” shall be punished.
So that, to commit this offense, as it is undertaken to be charged in these indictments, one must (1) obtain money from another— or property, as the case may be; . (2) by a false pretense; and (3) with intent to defraud.
The law and its administration have to do, first, with the general welfare—the public good. Salus populi est suprema lex. No law and no transaction will be maintained by the courts if its tendency is against public policy.
Next to the conservation and promotion of the public weal, the law and its administration have to do with the protection and conservation of private rights.
*132 .Among the rights which the law recognizes, defines and protects, is the right of private property. The law protects this right of property, (1) by preventing threatened invasion thereof; (2) by restoring property .to its owner; and (3) by compensation in damages. Such protection is- afforded in the particular instance by civil action and upon complaint of the person in whom the property right inheres.
.But the law goes further in the protection of this property right, by punishing him who wrongfully invades it.
When a particular kind of invasion of the property right has become prevalent, or is such that it can not be adequately restrained or compensated in the particular instance, and when the circumstances are such that restraint thereof will promote the public good, the Legislature may erect it into a crime, and, by the punishment of the wrongdoer, promote the general welfare by making the private right more secure in general.
In such legislation the act or transaction made criminal is an act or transaction that is a wrongful invasion of the property right, as that right is recognized by the law.
Larceny, embezzlement, robbery, malicious destruction and obtaining by false pretenses are illustrations of this kind of crime.
I do not say that an attempt to invade the property right may not be made a crime; nor would I doubt that some moral delinquency, some evil practice, might not become so prevalent, and its effect be so baneful to society, that it might be made a crime and be punished for the protection of society. I am not undertaking to catalogue all the things that may be erected into crimes by the Legislature. It serves my present pui-pose to show that when the Legislature undertakes to punish actual violation of the property right, the act or transaction described in the statute must be such as contravenes the property right, and the charge under the statute must show actual violation of such right.
It would be entirely competent for the Legislature to make it a crime for one person, by false pretenses, to induce another to part with his property to a third person. Such is the law in some jurisdictions. Such transaction invades the property right of the victimized owner, though the wrongdoer does- not benefit by his fraud, and the punishment of the wrongdoer tends to the greater security pf the property right in general.
*133 But such transactions, wherein the transgressor does not profit by his wrong, are so rare that our Legislature has not seen proper to make them criminal. Under our statute, the gist of the offense and the gravamen of the charge is the obtaining—the acquisition of another’s property, by the means stated. It is the obtaining that consummates the crime, and it is the place of the obtaining that determines the venue.
I read from the opinion in the case of Connor v. State, 29 Fla., 455:
“The information is for obtaining property under false pretenses. There was a motion made in the trial court to quash the information, but the motion was overruled, and error has been assigned on this action. The first ground of the' motion to be noticed is the one asserting that the information does not show jurisdiction of the court to try the cause. The'principle of law relied upon in support of this contention is that the receipt of money or other property obtained under false pretenses is the consummation of the offense, and the place of its receipt by the offender is the locality of jurisdiction. The receipt or obtaining of the property is the consummation of the offense, and in the absence of a valid qualifying statute the place of its receipt is the sole locality of jurisdiction. If the false pretenses .are made in one jurisdiction, but the property is obtained in another, the prosecution must, in the absence of such a statute, be instituted in the' latter jurisdiction. ’ ’
And in the same case on page 892, the court defines the .word ‘1 obtain ’ ’:
“To ‘obtain,’ as defined by Webster, means ‘to get hold of by effort; to gain possession of; to acquire. ’ Thq two former definitions give more accurately than -the third the meaning of the word as used in the statute.” That is, “to get hold of by effort, to gain possession of” are better definitions of the word as used in the statute, than to ‘ ‘ acquire. ’ ’
“In State v. Lewis, 26 Kans., 123, the information charged that, upon certain false pretenses of Lewis, one Burton ‘paid’ to him the stated sum of $330, tbe money, property, and effects of certain parties, but it was not alleged that Lewis obtained any money or any other property of any one; and the question was whether the word ‘paid’ was the equivalent of the word ‘obtained.’ ‘The crime defined by the statute,’ says the opinion, *134 ‘is not that of making a false pretense; but the provision is directed against one who obtains something, or who, in other words of substantially the same meaning with the words of the by false pretenses. This being true, the information does not describe the offense either in the exact words of the statute, or by adoption of other words of substantially the same meaning with the words of the statute. ’ ’ ’
Then Bracey v. State, 64 Miss., 26:
W. Robert Bracey and Dillard J. Williams were jointly indicted for obtaining money by false pretenses. Bracey was tried separate^. On the trial, it appeared that he was circuit clerk; that it was his duty to issue to witnesses in attendance on court certificates to enable them to collect their fees; that he issued a series of fraudulent certificates and placed them in the hands of Williams; and that the latter sold them to one Hezekiah Foote.
In the opinion, the court say:
“If Williams acted honestly, and Bracey received none of the money paid for the certificates, as assumed in the first instruction given for the state, Bracey could not properly be convicted of obtaining money by false pretenses. In order to convict him of the offense charged, it was necessary that the money obtained, or some part thereof, should have been obtained by him, or for him.”
The only other authority that I care to refer to upon this point is In re Waterman, 29 Nev., 288. I read the third paragraph of the syllabus:
“An indictment which merely charges one with misrepresenting facts regarding stock of a corporation to one who bought it in consequence thereof, without showing that accused obtained any money or other thing of value thereby, does not charge an offense under a statute providing for the punishment of one who shall obtain from another money or other property by means of fraudulent pretenses. ’ ’
These authorities show—and there are numerous authorities to the same effect, and many of them have been cited—these authorities show, what is plain, from the lanuage of the statute ' itself, that the essence of the crime—the very quintessence of the crime—is the acquisition of another’s property by fraudulent representation. The offense is committed when one by fraudu *135 lent representation enriches himself by so obtaining another’s-property.
I read an extract from the opinion in the case of Kennedy v. State, 34 Ohio St., 310, 314—the court is considering whether the indictment charged an offense under any one of several statutes, and it refers to three sections of the statute, and coming now to the fourth, the court say:
“No offense is charged under the first clause of Chapter 11, Section 7. In a prosecution under that clause against one who ‘■by false pretense, with intent to defraud, obtains from any person anything of value’ it is essential to the validity of the indictment that it contain an averment, in terms, that the accused did obtain from another, a thing of value, as, for instance, a check; or in place of the word obtain, a word or words of equivalent or larger meaning may be employed, but the word contained in the statute must be clearly embraced in any such substitute.
1 ‘ The charge that, by reason of the false • pretense, ‘ House paid said order by delivering to said George B. Kennedy a check for two hundred dollars, ’ is argumentative; but, giving to it a construction which is perhaps permissible, it amounts to an averment of a delivery of the check by House to Kennedy, by reason of the false pretense. House is made the actor. He delivers the check to Kennedy in consequence, directly or indirectly, of something said by Kennedy, who may not have desired a check, or intended to get possession of one. The averment, though entirely proper, is in no sense the equivalent of, or a substitute for, the averment that Kennedy did obtain the check' by false pretense. The crime defined in the' statute is not that of making a false pretense, but the provision is directed against one who obtains something, or, in other words, one who gets possession of something purposely, by effort, that is, by false pretense.”
I have dwelt upon this element of the statute under consideration because there is a contrariety of opinion held by the courts over the country upon this question. Quite a good many courts of ability and respectability have held that it is a violation of the statute when A procures B to deliver propex’ty to C, tíxat A thereby obtains, within the xneaning of this statute, the property of B.
A number of courts, as I have showxx, do not so hold and I think that that is oleaxdy 'the attitude of our Supreme Court. *136 I have been, all the more careful and laborious in investigating this phase of the subject because of the opinion of Judge Richards with which I have been confronted. It does seem to me that Judge Richards must have overlooked this decision, Kennedy v. State, in following the very respectable line of authorities outside of Ohio which hold the other way.
This language of the Supreme Court shows that the party charged and not the party complaining must have been the actor in the transaction.
In harmony with this view, that the accused and not the accuser must be the actor, is the holding in Norris v. State, 25 Ohio St., 217.
The obtaining, to be violative of this statute, must be by means of “any false pretense.”
The first requisite of this element is, that it must relate either to a past event, or to an existing fact. A representation in the nature of an assurance, or a promise, or an opinion, is not sufficient—citing ,a number of cases. This rule is so well established and is so easy of application that it needs no comment.
Another requisite of this element is, that it must be of such .character—that is, the false pretense must be of such character —as to be operative upon the complainant to induce him to part with his property; Stated in other words, and perhaps more properly stated, it must be of such nature as to subserve the fraudiilent purpose of the accused and to enable him to ‘1 obtain ’ ’ the other’s property. There are a number of authorities upon this proposition to which I need not refer.
And there must be an “intent to defraud.” But the mere intent is not sufieient. The person must actually be defrauded. It is not the “intent” that is to subject the accused to punishment; it is the obtaining, etc., with intent, etc. I think our Legislature has, in one or two instances undertaken to make it criminal for men to think evil, but they have not expressed that in this statute.
If property is not obtained by the unlawful means and with the unlawful intent, so that the owner is not thereby defrauded, no property right has been invaded, and therefore this particular kind of offense has not been committed.
*137 As I said before, this offense of obtaining money by false pretense involves a violation of property rights. 11
There must be denial of the iruih, of the representations, and such negation must be certain.
Having stated the legal essentials of the offense, of obtaining property by false pretenses, I will take up the several indictments charging this offense and consider the several motions to .quash these indictments.
State v. James G. Gibbs.
I will first take up indictment No. 7417 against James G. Gibbs, Jay F. Laning and William Perrin. The false pretenses in this case were made to the Ohio Trust Company, and the intent, or the alleged intent, was to defraud that company.
The false representations that are alleged, are first, that the Bond Building Company had property of great value, the Bond Building Company being a corporation located at Cleveland, Ohio; second, that its capital stock was worth at least $60,000; third, that the accused had no interest in the building company, its property or its stock. The negations are that the building company had no property of any value and that its capital stoclc was of no value; that the accused were interested in the building company, in its property and in its stock. These negations are ample.
One of the grounds in the motion to quash this indictment is, that there is no natural, causal, or logical connection between the so-called false pretenses and the obtaining of the so-called property. Second, it is not shown how the alleged false pretenses could have resulted in the obtaining of the so-called property.
I will not read from the indictment, but a reading of it makes it clear that there is not stated any nexus between any of the three parties. It does not appear how such representations could operate to induce the Ohio Trust Comapny to part with anv property. The representations are not shown by any allegation or innuendo, or any explanatory matter to have had any relation at all to the Ohio Trust Company. So far as appears from the allegations in the indictment, it was a matter of the utmost indifference to the Ohio Trust Company whether these statements about the Bond Building Company were true or false. You *138 might just as well allege that defendants had falsely represented that Mars was inhabited. It had just as much relation to the allegations of the indictment as to the representations that are alleged.
Another ground of the. motion is, that the “so-called property described in the indictment was not such property as could be procured by false pretenses within the meaning of the statute. ’ ’ The so-called property is not sufficiently described. I think the description of property in this indictment is not intelligible to the ordinary mind. It might be understood by a banker, but it is not intelligible to me and I doubt if the grand jurors understood it, when they wrote it, signed it and returned it. Thejr may have understood what property was involved, but they have not described it here so as to communicate what they understood about it to the court and to the accused, as required in an indictment.
There is also a description here of a mortgage loan, No. 1284, ■to H. Lindale Smith of the value of $10,152.95. "What is'this mortgage loan that is numbered 1284, and what kind of a mortgage loan is it that is of the value of $10,152.95? It does not appear, it is not identified; and the next is interest due and unpaid upon said mortgage loan of the value of $350. Unpaid interest the subject of larceny, or of obtaining by false pretenses— unpaid interest? Nothing could be much more remote than that; nothing could be much more indefinite than that. How they could obtain by false pretenses unpaid interest I can not conceive. The only way to get unpaid interest is to collect it, to make a person pay it; you can not steal it. The several motions in this case will be sustained.
No. 7416 is against the same parties, and what I have said as to No. 7417 is equally applicable to this indictment, and the motion will be sustained as to No. 7416.
State v. Beattie.
The next is a motion to quash the indictment against Albert M. Beattie. This is an indictment for obtaining money by false pretenses. There is a motion to quash on this ground; first, ‘ ‘ said indictment is defective in that it wholly fails to describe or set out the property alleged to have been obtained by said de *139 Tendant or in any way apprise him of what he will have to meet in the trial of said case, or sufficiently inform him so he can properly prepare his defense.”
The indictment charges -the obtaining of some notes—three several notes from the Ohio Trust Company. I think the property is sufficiently described. The notes are described, not as fully as notes may be described—that is not the requirement; but the property must be described with sufficient certainty to distinguish it—to identify it. T think that is done in this indictment.
Second. "Said indictment is defective in that it wholly fails to describe or state how many certificates of shares of the capital stock of the Norwalk Savings Bank Company were held by said the Ohio Trust Company, their dates or the numbers thereof, or in any other way to identify or describe them.”
As I recollect this indictment, the situation was something like this: The Ohio Trust Company held certain notes of two men by the name of Price, perhaps secured by collateral or certificates of stock of the Norwalk Savings Bank Company, and the false representation that it alleged was that the accused was authorized to take up those notes or receive those notes; that if they were delivered to him, then the Norwalk Savings Bank Company would pay to the Ohio Trust Company the amount of the stock that was held in pledge as collateral. Now, it is complained here that these shares of stock are not described sufficiently. It is not necessary to describe them. They are not a part of the property that is alleged to have been taken or obtained. They were held in pledge by the Ohio Trust Company and the reference to them here becomes necessary because of the alleged false representations. The only office that a description of them here serves is to help to identify the notes, and I think that what is said of the certificates only being held as collateral on these notes, does help to identify the notes and helps out what is in other respects a defective description; but there is no requirement upon the part of the state to give a definite description of these certificates of stock and there can not be any complaint of that. I will say here that in a number of indictments the grand jurors have said that certain other descriptive features of property are not known to the grand jurors. Now, that is proper; that excuses the- grand jury for not making a more perfect description; but *140 it does not excuse the government from making such description of property in the indictment as will answer the requirements that the Constitution and the laws demand. Whether the grand jury can do that or not, the accused is entitled to it and the indictment is insufficient if it does not contain it.
Third. “Said indictment is defective in that it fails to show that the acts therein in any way defraud the Ohio Trust Company, or that the Norwalk Savings Bank Company did not immediately pay the Ohio Trust Company the full par value of the shares of stock of the Norwalk Savings Bank Company alleged to be held by the Ohio Trust Company in the amount and value of $6,000.”
I can not see why that is put in the motion. It clearly appears in the indictment that the accused obtained these notes by means of these representations and obtained them from the Ohio Trust Company. In this case, the accused obtained them; he did not procure them to he delivered to somebody else.
Fourth. “Said indictment wholly fails to show that the Ohio Trust Company-had any right to sell or dispose of the sixty shares of stock of the Norwalk Savings Bank Company, or that the Norwalk Savings Bank Company had any right to buy its own stock. ’ ’
It is not intimated here that the Norwalk Savings Bank Company would do that. The representation was that the bank would pay the amount of this stock to the Ohio Trust Company, if it would deliver the notes to the accused. There is no representation that the Norwalk Savings Bank Company would buy its -own stock. I think this indictment is good as against the motion. I think it is good as against the demurrer. What I have said with reference to the first count applies also to the second count as well.
State v. Perrin.
. No. 7241 is an indictment against William Perrin—an indictment for “obtaining,” and i-t contains this:
“By which said false pretense the said William Perrin did induce and procure the said ITenry Mack to deposit with said the Ohio Trust Company certain money of the amount and value of $100 of the personal property of the said Henry Mack, and *141 then and there .and thereby did unlawfully obtain from said Henry Mack said money of the amount and value of $100 of the personal property of the said Henry Mack.”
For aught that appears, this bank -was- solvent and safe—T mean the Ohio Trust Company, and Mack’s money is still there for him, if he has not withdrawn it. There is no allegation that he lost it. The indictment does say, however, that Perrin then and there and thereby did obtain said money from Mack; but this co.uld not be. The bank got it'. The facts and circumstances are set out and it is alleged that he thereby, by those facts and circumstances that are set out, got the money. The facts are inconsistent with the conclusion stated, and must, in case of repugnancy, prevail over the unwarranted conclusion drawn by the grand jury.
While it is stated that Perrin obtained Mack’s money"it affirmatively appears that Perrin did not get it, and it does not appear that Mack lost it. No property right was invaded.
The effect of the false pretense was, that Mack became a depositor in the bank and that he parted with the possession and title to his money and became a creditor of the bank.
In this case, I am confronted with the opinion of his honor, Judge Richards, overruling the motion to quash the indictment in State v. Perrin, ante, in which he holds that:
“If the defendant by means of false pretenses with intent to defraud has induced the prosecuting witness to deposit money in a bank of which the defendant is a director, he has obtained the money within the meaning of Section 7076, Revised Statutes, although he does not personally receive the same. ’ ’
' I very much regret that I am not able to concur with Judge Richards’ view of the statute. Because I am compelled to differ from him, I have considered the matter with more particularity, and at greater length than I otherwise should have done. Of course Judge Richards may be right. If he is wrong, I will admit it is the first time I have known him to be in error; and if I am wrong, I will admit it is not the first time I have been in error. The best of us may go wrong. ■ It is said that even Jove nods sometimes.
I want it distinctly understood that in what I have to say of Judge Richards’ opinion, I do not intend to criticise him. It is *142 simply a difference of opinion; and it is due to him and to me that I state fully and clearly my reasons for dissenting.
In the first place, the question whether this indictment sufficiently charges that Perrin obtained Mack’s money, within the meaning of.this statute, relates to the sufficiency of the indictment in matter of substance, and can arise only upon demurrer and not upon motion to quash, which questions the form of the indictment, or the manner in which the offense is charged.
But passing this, it is said that if I procure A to deliver his horse to B, I have obtained A’s horse. All agree that if I procure A to deliver his horse to me, I have obtained it. Slow can things so different be so much alike? The results are different, but the effect is the same. We have all been misled when we were taught that like effects proceed from like causes.
Some judge has said (speaking facetiously) that when we come to construe a statute, some regard should be given to the words in it.
Dr. Lieber in his great work on Legal and Political Hermeneutics, says that in strict construction—and that is the kind of construction to be used here—a word can have but one meaning and that is always the same meaning.
It does not require a philologist to see that in the two examples I have given, the word “obtain” is given different meanings. This is in plain violation of an unbending rule.
. Let us consider the etymology of this word: It comes.from the Latin preposition ob, meaning to, or toward, and the Latin verb, ieneo, to hold. We get “tenure” from this. Put together, they mean, literally, bo hold to, to hold toward. Ob is just the opposite of ah, which means from, or atcay. Thus, ab and duco, to lead, when combined, make our word abduct, to take away, to lead away.
I think the best equivalent for. the word obtain is our word “get,” from the Anglo Saxon. I read a brief paragraph from the synonyms in Webster’s Dictionary—synonyms for the word “obtain”: The definition of “obtain,” to hold, to keep, to possess; to get hold of, by effort, to gain possession of, to procure, to acquire in any way. That is the literal meaning of obtineo. Then Webster says, in regard to the synonyms:
*143 “To obtain implies a desire for possession and some effort directed to the attainment of that which is not immediately within our reach. Whatever we thus seek and get, we obtain, whether by our own exertion or those of others, whether by good or bad means; whether permanently or only for a time. Thus a man obtains .an employment; he obtains the information he desired; he obtains an answer to a letter.”
I think it is pretty clear -that if we adhere to the etymological meaning of this word, Perrin did not obtain Mack’s money. He induced Mack to deliver it .to the bank, and the bank received it.
In the course of his opinion, Judge Richards says:
“It is contended in support of the motions to quash these indictments that within the language of this section, the property, if obtained at all, was not obtained by the defendant, and that therefore the indictment does not charge an offense under the statute.
“It appears by the indictment that the money was in fact deposited by the prosecuting witness with the Ohio Trust Company.
“It is argued with a great deal of force and the argument is sustained by authorities that are convincing to this court, that, by virtue of the deposit, a director has no control, in the sense that he may dictate, or direct or handle the fund so deposited. He can not receive a dollar of it and he would have no authority individually to control it, but that does not fully answer the problem that is to be decided in this ease.
“The language of the statute is ‘obtains,’ and while, as I have said, a director, by virtue of the deposit, certainly would not receive this fund, would not be able individually to control it, yet the question still remains whether, within the meaning of the statute, the property has been by him ‘ obtained. ’ ‘ Obtain, ’ as I understand it, means to get by effort, to procure. Neither the title nor the possession of this money, under the averments of the indictment, passed to the defendant. He did not, therefore, receive it. Nevertheless, in the opinion of the court, he did, within the meaning of this statute, obtain it, although the bank received it. If I solicit, successfully, the appointing power in behalf of my friend, I obtain the appointment, but the commission, on being delivered, is delivered to my friend and he receives .the appointment. I think that distinction is. applicable to the cases now under consideration. Especially is that true when we consider the object of this statute, which is, to make unlawful the defrauding of another by false pretenses. What, then, are the elements _ of the offense ? They are, false statements, knowingly made, and something of value parted with upon the faith of them. The state *144 is not so much concerned as to who derives the benefit as it is that by means of false statements, knowingly made, the prosecuting witness has been deprived of his property.”
T think that is in clear conflict with the attitude of our Supreme Court.
Here is where I think Judge Richards falls into error, by regarding the defrauding of another as the thing that the statute is aimed at. In enumerating the elements of the offense, he entirely omits the obtaining. It seems to me he extends the statute, by a liberal construction.
The cases of Connor v. State, supra; Bracey v. State, supra; In re Waterman, supra; Norris v. State, supra; Kennedy v. State, supra, and many cases not cited, all show that the gist and consummation of the offense is the obtaining by the accused.
Then Judge Richards goes on:
“It seems to the court then, that if the defendant made the false pretenses knowingly and thereby induced the prosecuting witness to deposit money in this bank, the defendant obtained it, within the meaning of the statute. I reach that conclusion upon considering the objects and purposes of the statute, and the meaning of the word ‘obtain.’ Undoubtedly, under ordinary circumstances, a man, when he obtains an article, receives it; but I am convinced that the reception is not the essential part of the obtaining; that if, by the efforts and representations of a party, another is induced to part with his property, then that property has been obtained, within the meaning of this statute, although the title to it may not pass to the person who made the representations. What say the authorities upon this question? They are not uniform and it would be impossible to reconcile all of them. I have examined a great many and it seems to me that the greater weight of the authorities is decidedly in favor of the view which I have taken.”
Then Judge Richards cites State v. Hofman, 1 N. P., 290. Then he concludes, reading from the last paragraph of the opinion in that ease:
“ It is alleged against this indictment, on both counts, that there is no allegation that the defendant intended to obtain this money for himself. The statute says, ‘whoever writes part of a written instrument with intent to obtain anything of value. ’ It does not say for whom the property should be obtained.”
*145 That was a Cincinnati case decided by a common pleas judge and under another section of the statute. This case (State v. Hof man), involved Section 7088, Revised Statutes, which makes it a crime to do certain things, “with intent to obtain” property from another, without actually obtaining it. It does not involve any invasion of the property right.’ It deals with an attempt to invade the property rigiht.
The indictment in that case did allege that the acts of the accused were done “with the intent to obtain property.” It did not allege'that the intent of defendant was to obtain the property for himself, and the court on demurrer held the indictment good, because it had all the statutory requirements. The court (of common pleas) did not decide, or undertake to decide, the meaning of the word “obtain,” which was the point Judge Richards decided.
Judge Richards cites other cases, most of which sustain him, but a few of them do not. As I said, I think our Supreme Court in the case of Kennedy v. State, supra, clearly indicated a contrary view of the statute.
In view of the decision of Judge Richards, and because I ivas not able to concur with him, I obtained from Cleveland, 1 Dears. Cr. Cas., which contains the original report of the case of Regina v. Garrett on which is based all the sound doctrine which occurred to me to be sound on this subject.
This case was decided by the court of King’s Bench, in London, in 1853. ..The defendant, Garrett. was indicted in England for a misdemeanor in attempting to obtain moneys from L. & Co. by false pretenses. The defendant had a circular letter of credit, No. 41, from Duncan, Sherman & Co. of New York for 210 pounds, with authority to draw on L. & Co. in London in favor of any of the lists of correspondents of the banlc' in different parts of the world for all of such sums as he might require of the 210 pounds. The circular letter of credit of Duncan, Sherman & Co. were each numbered with distinctive numbers and it was the practice of the correspondent on whom the draft was drawn, after giving cash on such draft, to endorse the amount on the circular letter and when the whole sum was advanced, the last person making such advance retained the circular letter of credit. The defendant, having procured from .Duncan, Sherman *146 & Co. of New York, a circular letter of credit for 210 pounds, No. 41, came to England and drew drafts in favor of the named correspondents there, in different sums, in the whole less than 2.10. pounds, retaining the circular letter, the sums so advanced being endorsed in the letter. He then went to St. Petersburgh and there exhibited the letter of credit to W. & Co. of that place, a firm mentioned in the list of correspondents, the letter having, been altered- by him, by the addition of the 'figure 5 to 210, so converting it into a letter of credit for 5,210 pounds. He ob-, tained from that house several sums, and finally the sum of 3,200 pounds, and another of 2,500 pounds on drafts for those amounts on L. & Co. W. & Co. forwarded these drafts to their house in London, who presented the draft for 1,200 pounds on L. & Co. and required payment of it. L. & Co. having been advised of -the draft, No. 41, by Duncan, Sherman & Co. as a draft for 23.0. pounds only, discovered the fraud and refused to pay it. The defendant being afterwards found in England, was taken into custody and indicted, and as before stated, the jury found the prisoner guilty, and in reply to question but by the learned Baron, as to whether, although the defendant’s immediate object .was to cheat W. & Co. at St. Petersburgh by means of a forged letter of credit, he did not also mean that they or their correspondents or the endorsers from them should present- the draft and obtain payment of it from L. & Co., and the jury further found that he did.
. Held: That if L. & Co. had paid one of the drafts, the defendant could not in law have been found guilty of a statutory mis* demeanor, and consequently that he could not have been guilty of an attempt to commit -a common law misdemeanor.
There was a 'Conviction and counsel for the Crown strove strenuously to maintain it, but the court held against it. This report contains, a sort of running fight between counsel and the court.
Huddleston (who was with Dearsly), in support of the conviction, was then heard upon this point:
“It-is not necessary to constitute -an offense within the act of Parliament that there should be a getting of money for the party himself, that is, use, but the inducing another to part with his jnpney under such circumstances as amount to cheating, is suffi- *147 . cient. The words of the statute are, ‘obtain from any other person.’ ” •
That is the language of our statute.
“Suppose a man intending to ruin another, induces, him, by false pretenses, to part with a large sum of money to a .third party, would it not be obtaining money under false pretenses 1’ ’
This is the language of counsel for the Crown, and Maulé, J., interrupts him:
“You say it is-sufficient, if a man by a false pretense, induces another to spend his money ? ”
Huddleston : ‘ ‘ There must be intent to cheat or defraud, ’ ’
Maulé, J.: “ The word ‘ obtain ’ means the same, as the word ‘get’ in its sense of ‘acquire.’ ”
Coleridge, J.: “You must consider.the word with reference to its use in the statute which draws a distinction between larceny and false pretenses.”
Huddleston: “The statute does not contemplate the benefit of the party defrauding, but the injury to the party defrauded.”
That is just the view that Judge Richards took in almost so many words.
“Here, there was an ‘acquiring’ to the use of the defendant. It is not necessary that the party from whom the money is obtained should actually hand it over to the person making the false pretense. This case is distinguishable from that put on the other side of the five pound forged note. The jury have found that defendant meant that Wilson & Co. in St. Peters-burgh, or their correspondents, or endorsérs, should present the draft, and obtain payment of it from the Union Bank. Thus Wilson & Co. are the agents pointed out and mentioned by the defendant himself as the persons to whom the Union Bank, with whom he falsely asserts he has credit,' should pay the money. They are the persons to receive it. ’ ’
Lord Campbell: “What were they to do with the money •when received?”
Huddleston -. ‘ ‘ They were to apply it to his use. An actual reduction of the money into the possession of the defendant can not be necessary. Wavell’s case is distinguishable, the decision being that no specific sum was- obtained, but credit in account,” etc.
Then ive come to the judgment of the court; Lord Campbell, *148 Clii-ef Justice: “I am of opinion that the conviction can not be supported.”
Lord Campbell concludes by saying: “A gross fraud has been committed, but not the obtaining money under false pretenses-within the statute.”
Parke, Barop: “The word ‘obtain,’ as used in the statute, seems to mean, not só much a defrauding or depriving another of his property, as the obtaining some benefit to the party making the false pretenses. ” . ,
Maulé, J., states his view in addition to what' had already been said—that the offense was committed in Russia and that the English court had no jurisdiction, that there was- a wrong venue.
I read from 2 Roscoe’s Crim. Ev., 649, in commenting upon this ease:
• “Meaning of the word ‘obtain.’ The property must be ‘obtained by ■ the prisoner. ’ In Regina v. Garrett (the case from which I have just read), Maulé, J., said the wordobtain’ means the-same as the word ‘get’ in its sense of ‘acquire,’ and Parke, Bar-on, said the word ‘obtain’ seems to mean not so much a defrauding or depriving another man of his property as the obtaining some benefit to the party. But in Regina v. Kilham, L. R., 1 C. C. R., 261, etc., it was held that the word ‘obtain’ does not mean obtain the loan of, but obtain the property in, and that the obtaining must be coupled with an intention to deprive the owner of his property, and not á mere intention to make use of the thing .and return it. It was ,in consequence of the decisión in, Regina v. Garrett, that Section -89 of the English statute was enacted, under which it is necessary that thé defendant should obtain, in the sense of ‘get’ or ‘acquire’ for his own benefit, and it is sufficient under that section, if he causes money, etc., to be paid to any person, whether for his own benefit or for the benefit of anybody else.”
Then in 2 Russell, Crimes, 618 and 619:
“By the 24 and 25 Vict. c. 96, s. 88, ‘whosoever shall by any false pretense obtain from any other person .any chattel, money, or valuable security with intent to defraud, shall be guilty of a misdemeanor,”-etc.
’Section 89 (and this is the section they enacted because of that-decision in Regina against Garrett), they wanted their statute to embrace the procuring of a party to pay money to a third *149 person,- as well as the obtaining of'it by the-wrongdoer himsel'f'; so this Section 89 was enacted, and it reads: ■ '
“Whosoever shall-by any fálse pretenses, cause' or procure any money to be paid, or any chattel 'or valuable security to'be delivered to any other person, for the use or benefit or on account of the person making such-false pretense, or of any other person, with intent to defraud, shall be deemed, * * shall be deemed to have obtained such money, chattel, or valuable security, within the meaning of the last preceding section.
“This-clause is new-. It is intended to meet a-11 cases where any person by means of any false pretense induces' another to part with property to any person other than -the party making the pretense. It was introduced to get rid of the narrow meaning which was given to the word ‘obtain’ in the judgments in Regina v. Garrett, Dears. C. C., 232, post, p. 698, according to which it would have been necessary that the property should either have been actually obtained by the party himself or for his benefit. ’ ’
Regina v. Garrett, supra, was not decided upon any technical meaning of the word ‘ ‘ obtain, ’ ’ but upon the broad ground that the virus of the offense was not so much a defrauding or depriving another of his property, as the obtaining of some benefit to the party making the false pretense (quoting from Baron Parke).
And this accords well with the eases that hold the obtaining by the accused to be the consummation of the offense and the test as to venue. The English judges, or some of. them, took the ground that as the obtaining was in St. Petersburgh, the jurisdiction was there and not in England. I come now to No. 7242 against William Perrin, This case is of the same nature as that of No. 7241, -and there will be the same ruling in No. 7242 as in No. 7241; the same is also true of No. 7243, against William Perrin.
State v. Gibbs et al.
The next is the case of No: 7214 against James G. Gibbs and Jay 'F. Laning, two counts with a motion to quash. The first count is for obtaining, etc. This count is amenable to the -criticism heretofore made of the Perrin indictments. It alleges that Mrs. Case was induced andpróeured to deposit her money with the Ohio Trust Company and shows the accused did not “obtain” it. It does, however, charge that the bank was insolvent and *150 known by defendants to.be so—an averment thatds wanting in the Perrin eases. This defect does not relate to form of indictment,, or manner of charging the offense and is not ground for quashing. The motion will be overruled, but if a demurrer should be filed, the court would sustain it.
The second count charges an intent to obtain. That is under Section 7088, Revised Statutes. I read the commencement and the conclusion of this second count:
“And the grand jurors,” etc., “do further find and present that Jay F. Laning and James G. Gibbs,” etc., “on the fifteenth day of May, in the year of our Lord, one thousand nine hundred and five, in the county aforesaid, being then and there'officers, to-wit: The said James G. Gibbs being the president, and the said Jay F. Laning being the vice president of the Ohio Trust Company, a corporation,” etc., “unlawfully did write and print the whole of a certain instrument, of the purport and effect following, to-wit: ’ ’
Then follows a copy of what has been spoken of in argument as a “pamphlet” after which the indictment concludes:
“■Which said instrument, so written and printed as aforesaid, they, the said James G. Gibbs and the said Jay F. Laning, as such officers, as aforesaid, unlawfully did send to one Angie Case, then’and there being in said county, with intent then and there to obtain from the said Angie Case certain money of the amount and value of one hundred dollars of the personal property of the said Angie Case, and with intent then and there to wrong and defraud the said Angie Case of the same,” etc.
This count contains all that is in the statute; but that is not sufficient. It should contain averments to show that the “instrument” is one calculated to mislead, so as to show that when the grand jury states the conclusion of intent to obtain money, and to defraud, the court may see that they have not gone upon wrong premises.
For aught that appears, all that is stated in the pamphlet was true. It does not appear that the pamphlet would in any way help these defendants to obtain Mi’s. Case’s money. It might induce her to deposit money in the bank.
It.is claimed the paper contained in this count is not an “instrument.” It is not necessary to determine that, but it is argued at some length and' I feel moved to speak of it.
*151 It is claimed that that was not an instrument. ' The statute says that “whoever writes or prints any létter—the whole or any part of any letter, telegram, or other instrument, sends it with this intent.” It is claimed that this pamphlet is not an instrument within the meaning of the statute.
Bouvier defines “instrument” as “the writing which contains some agreement, and is so called because it has been prepared as a memorial of what has taken place or been agreed upon. It includes bills, bonds, conveyances, leases, mortgages, promissory notes and wills, but scarcely accounts, ordinary letters or memoranda.” And the rule that requires such added word preceded by ‘ ‘ other5 ’ following a list of words to be of the same nature as the words preceding it, is urged here.
Under the words “ejusdem generis,” Bouvier says:
‘ ‘ In the construction of laws, wills and other instruments, when certain things are enumerated and then a phrase is used which might be construed to include 'other things, it is generally confined to things ejusdem generis-, as, where an act provided that a writ of quo warranio might issue .against persons who should usurp ‘the offices of mayors, bailiffs, port-reeves, and other offices, within the cities, towns, corporate boroughs and places within Great Britain,’ etc., it was held that ‘other offices’ meant ejusdem generis, and that the word ‘places’ signified places of the same land; that is, that the offices must be corporate-offices, and the places must be corporate places.”
I find in 19 Cyc. Law & Proced., 393, in a note on tliis term or phrase, ejusdem generis-.
“Where a statute enumerates certain kinds of false pretenses, * * " the ‘other’ pretenses intended by the statute are only those of a kindred nature to those which are enumerated. * * But this rule has no application where the pretenses enumerated are only general, as ‘false tokens, false writing,’ etc. Where the words, ‘by color of any false token or writing, or by any other-false pretense’ are used in a statute, the'‘or by any other false pretense ’ is a distinctive method in which the fraud may be perpetrated, not ‘by color of any other false pretense,’ but ‘by any other false pretense.’ ”
I think that this pamphlet, which is a mere advertisement, a mere commendatory circular, is not an instrument within the legal, technical meaning of the word “instrument.” I do not think it was intended to be used in that sense—-in the statute. *152 I think it was not intended to be used—was not used by .the Legislature in its strict, legal, technical sense. I am inclined to think that I should hold that the document set out here and called an “instrument*” falls within the statute. Although it. is not strictly and legally an instrument, Bouvier says in what I have read that the word includes “bills, bonds, conveyances,” etc., “but scarcely accounts, ordinary letters or memoranda.”
■ He distinguishes letters, and that is one of the terms used in the .statute—“.any letter, telegram or other instrument.” Bouvier says that a letter is not an instrument. I am inclined to think that even if the rule of ejusdem generis is to be applied, that the paper set out here comes within that rule; I think it is of the same genus as a letter or telegram. It does not apply to the genus ‘ ‘ instrument ’ ’ in its legal, technical meaning. I think it is of the same general nature as a letter, telegram or other instrument.
The motion to quash this count will be overruled: The defects I find in it are subject to demurrer and not a motion to quash. If a demurrer were filed, the court would sustain it.
No. 7432 is an indictment against James G-. Gibbs and Jay F. Laning, charging embezzlement. In this case there is a motion to quash. The property embezzled or claimed to be embezzled is designated as mortgage loans, collateral loans, unpaid interest, and so on.
These items of property are in no intelligible way described or identified, nor is it clear that they were in such form that they could be subject to embezzlement. The motion to quash will be sustained. .
No. 7413 is an indictment against James G. Gibbs and Jay F. Laning, charging embezzlement. What I have said in regard to No. 7412 applies as well to No. 7433. The motion to quash will be sustained'.
There is another ground in this case, and that is the statute .of limitation. As to the three years’ provision in Section 6842, Revised Statutes, I concur in the opinion of Judge Richards that has been furnished me, that this is not a limitation as to prosecution. The provision, in this Section 6842, in regard to the three years, is authority for grouping smaller items so as to make an offense in the aggregate a felony instead of a misdemeanor; it *153 limits such grouping to items that occur'within three years before the commencement of the prosecution, and where there is such grouping, the state may convict of all or of any part of the items so grouped together.
State v. Perrin.
Nos. 7419 and 7420 are indictments against William N. Perrin for aiding and abetting in embezzlement. What I have said in regard to Nos. 7412 and 7413, applies to these—Nos. 7419 and 7420. The motion to quash will be sustained.
There is another matter in this motion and that is the ground of misjoinder. It is the opinion of the court that there is no misjoinder and in support of this, I cite Hartshorn v. State, 29 Ohio, St., 635. ' '
State v. Christian.
No. 7234 is an indictment against Fred W. Christian, charging perjury, and in this case there is a motion to quash.
I will not take the time to refer to the section of the statute involved in this motion. There is no allegation of fact to show that the statements alleged to be' false were in a material matter. I think, while it says that the statements sworn to were authorized by law, that is a conclusion of law based upon facts that are not stated in the indictment, and the law that the court will take notice of, without being named in the indictment, authorizes these rep.orts to be made at the close of business and not at the commencement of business on the day as of which they are made and then they are to be made upon the requisition of the Auditor of State.
All negations in this indictment are negatives pregnant except one and I will not stop to point that out. The negation that the amount was not $100, but was a much larger amount, is too indefinite; just so the statement that it was not $100, but ivas much less than $100. Now, that is pregnant with the admission that the amount is proximately right; it may be a cent less, or five cents less; it may be less or more, as the case may be, in amount—merely nominal, but that is not material.
That makes it pregnant with that admission—it invalidates it .as a negation. The motion to quash will be sustained.
*154 No. 7236 is an indictment against the same party with the same charge, and the motion to quash will be sustained for the same reasons.
State v. Gibbs.
The next is No. 7246, an indictment against James G. Gibbs for aiding .and abetting Fred W. Christian in the matter of perjury. There are the same defects in this indictment as in No. 7236; also a fatal mistake in dates that I have no doubt was a mere inadvertence. There is no way of curing, that defect. That of itself would be fatal. In No. 7241, which is an indictment against James G. Gibbs charged with aiding and abetting Fred W. .Christian in the matter of perjury, there are the same defects except as to dates. There will be the same ruling—-the motion to quash" will be sustained. No. 7287, an indictment against James G. Gibbs for aiding and abetting—the motion to quash in this case is by agreement of counsel sustained.
State v. Kies.
No. 7262 is an indictment against Day Kies charging perjury. What I have said with regard to these other cases is applicable also to this, and the motion to quash will be sustained.
State v. Elnen.
. This brings me to the seven cases numbered from 7255 to 7261 inclusive. In each of these seven cases there is a motion for an order on the- official stenographer for a copy of the testimony of the accused which he gave before the grand jury. . In this case, I am confronted and confounded by a decision of the Supreme Court (Lindsey v. State, 69 Ohio St., 215). I do not intend to be disrespectful to the reviewing court; I intend to observe the degree of subordination that an inferior court ought to observe. These motions can not be granted. I entirely concur with Judge Richards in an opinion upon similar motions which opinion has been furnished me. I think that Judge Richards has stated the right ground of refusal and stated it well. Section 7195, Revised Statutes, says:
“But the official stenographer of the county shall, at the request of the prosecuting attorney, take shorthand notes of the testimony and furnish a transcript off the same to the prosecuting *155 attorney, and to no other person, but such stenographer shall withdraw from the jury room before the jurors begin to express their views, or give their votes on any matter before them. Such stenographer shall take an oath to be administered by the court after the grand jurors are sworn, imposing an obligation of secrecy upon such stenographer to not disclose any testimony taken down or heard, except to the jury, or the prosecutor, unless called upon in a court of. justice to make disclosures.”
This is in entire harmony with our plan of procedure before the grand jury. It is explicit. The court could not grant these motions without a plain violation of that requirement of the statute. It seems to me that these cases present about as strong an emergency as could well be presented. It appears from the motions and from what was said here that this defendant who has seven indictments against him, was called before the grand jury as a witness at the session when the grand jury presented these indictments, and it is said that he testified concerning the very transactions upon which the indictments against him are based. Now, he wishes to file pleas in abatement. He desires to show that these indictments are based wholly or in part, as it may be, upon his own testimony.
The Supreme Court has held that such plea in abatement must set out the testimony—set out not only his testimony, but it must set out such facts in regard to the testimony before the grand jury as will show that the grand jury could not have indicted him without giving weight to his testimony. How that can ever be accomplished I can not tell—I can not conceive how that can be done. It seems to me that the Supreme Court has imposed upon a party.desiring to file a plea in abatement of this kind, the requirement of putting into his plea, matters of fact that are not available to him—things that the statute forbids him to know, or to find out. He can not find it out.
To call a man before the grand jury and have him testify about his own conduct for which he is indicted by the grand jury, is a clear violation of constitutional rights—constitutional safeguards ; and then for the state, by its tribunal, to place him where he can not avail himself of the opportunity to assert his constitutional safeguard, or his constitutional right, is unfair. But what’is this court to do? It will not do to grant these motions. *156 That would be in the face of the plain language of the statute—a statute that is based upon good reason. That statute ought to be observed—ought not to be violated in any emergency. I am not now called upon to pass upon the sufficiency of any plea in abatement that the defendant may be able to prepare. I am not called upon to decide whether this testimony would be .available to the defendant upo.n any trial of the issues upon his plea in abatement; I am not called upon to decide that, and I do not decide it. I do not wish to intimate any view in regard to it. There may be no merit in his plea when it comes, if he had an opportunity to make it; it may have no merit, but that is not the question. While I have not looked over that case very fully it seems to me there are considerations involved that must not have been presented to the court.
' I have always understood, and I had the question very early in my.career upon the bench twenty or.twenty-five years ago—I understood then, and have ever since entertained the view, that an indictment is defeated whenever it appears that the accused testified before the grand jury and that the indictment may be in any part rested upon his testimony. If he was called before the grand jury and testified about things that entered into the indictment, ño matter what his testimony was, the court will not inquire about that; his constitutional right is invaded when it is made to appear that the indictment may rest in any part upon his testimony.
The idea that he must be required to show that there -was not enough other testimony without his to warrant an indictment that could not be found out by any means, would throw down all the bars; you couldn’t find that out. It seems to me that it would not be different, if a party indicted should plead in abatement, or want to plead in abatement, that there were three incompetent grand jurors impanneled, and the court should say “well that leaves twelve; that is enough to find an indictment—twelve good jurors. These twelve may have found this indictment and unless you can show they did not, it will hold the indictment good.” That never could be proved. You can never prove in any way nor anywhere how the grand jurors voted.
What I have said, is intended more to express my regret about the situation as I find it, than to make any complaint about it, *157 It may be there is. some view of it that does not occur to me, that would relieve the situation. All I have to decide is these motions, and I overrule the motion in each case.